PALMER *v.* CLARKSDALE HOSPITAL, et al.

Mar. 10, 1952.

No. 38145 (57 So. (2d) 473)

**Stovall Lowrey** and **Vincent J. Brocato**, for appellant.

Brewer & Brewer, for appellees.

**Holmes, J.**

The appellant brought this action in the Circuit Court of Coahoma County against the appellees, Clarksdale Hospital and Miss Louise Francis, seeking the recovery of damages for injuries to the feet of appellant alleged to have been sustained during the course of an operation on appellant while she was a pay patient in the Clarksdale Hospital. Miss Francis was at the time the superintendent of the hospital and during the course of

the operation, was serving as circulating nurse in the operating room. It was alleged that the injuries of appellant resulted from the negligence of Miss Francis, then acting as the agent and employee of the appellee hospital, in so applying heavy canvas straps to the feet and ankles of appellant, used for the purpose of fastening the patient to the operating table and suspending her feet and legs during the operation, as to cut off the blood circulation in appellant's feet, and in negligently failing to release or loosen the straps at necessary intervals so as to permit the resumption of the blood circulation, and that as a direct and proximate result thereof gangrenous sores developed on the outside of each heel of appellant's feet, causing her to suffer physical and mental pain and disability for a long period of months, and permanent injury.

The appellees filed separate pleas of the general issue, and the appellee hospital filed a special plea claiming immunity from liability upon the grounds that it was a charitable institution. The issue under the latter plea has been eliminated in view of the recent decision of this Court in the case of Mississippi Baptist Hospital v. Holmes et al., 55 So. (2d) 142.

The proof on behalf of the appellant showed that she entered the hospital for the purpose of undergoing two successive operations, neither of which had any relation to her feet; that her feet were perfectly normal and had nothing the matter with them; that each of the operations lasted about forty-five minutes, and that it was during the latter forty-five minutes that her feet were suspended in the straps without the straps being released or loosened; that she returned to her hospital room after the operation at about 11:30 A. M.; that at 1:00 P. M., Mrs. Fern Cobb, her special nurse privately employed by appellant's husband, came on duty with her; that at about 1:00 P. M. or 1:30 P. M., she began to react from the anesthesia and complained of her feet hurting her; that at about 3:00 or 3:30 P. M., she complained of her feet being cold and Mrs.

Cobb felt her feet and found them icy cold and applied a hot water bottle to the bottom of her feet; that before so applying the hot water bottle, Mrs. Cobb, according to her testimony, turned the patient over on her right side and placed a pillow between her legs and tested the water in the hot water bottle and found it not hot enough to burn and then wrapped the bottle in a turkish towel; that she had known hot water bottles to cause burns; that at about 3:00 A. M. or 3:30 A. M., Mrs. Wood examined appellant's feet and found bluish-purplish spots about the size of a half dollar in identically the same location on the outside of each heel; that they did not appear to Mrs. Wood to be a burn; that by 7:00 A. M. of the day following the operation, these spots had become raised blisters and that they developed into gangrenous sores; that the operations were a success and that but for the trouble with appellant's feet, she would have fully recovered in ten days or two weeks. The appellant introduced as a witness one doctor, Dr. I. W. Barrett, who testified that if all other causes were excluded, he would say that the straps caused appellant's injury.

The proof for the appellees showed that the straps were standard equipment and were generally used in reputable hospitals by surgeons of recognized standing and ability; that there was only one way to apply the straps and they could not be tightened, loosened, or adjusted after being applied; that Miss Francis was a competent, capable, trained nurse of twenty-five years experience, having served as superintendent of the Clarksdale Hospital for 15 years; that no injury had been known to result from the use of such straps and that in the opinion of the doctors testifying, no injury from the use of the straps was reasonably anticipated or foreseeable; that when appellant began to react from the anesthesia, she complained principally of generalized pain and that the hospital records showed that she complained of her elbows and feet hurting; that the straps did not cover the affected areas on her heels; that appellant's skin was very tender; that hot water

bottles will and have caused burns; that appellant's witness, Dr. Barrett, stated to Miss Francis and Mrs. Wood, appellant's privately employed night nurse, that appellant's injuries were caused by a hot water bottle.

None of the doctors who testified expressed the opinion that the straps caused the injuries except Dr. Barrett, who based his opinion upon the assumption that all other causes be excluded. Dr. Barrett denied telling Miss Francis and Mrs. Wood that the hot water bottle caused the trouble. Drs. Carr and Levy were offered as witnesses by the appellees but were not permitted to testify upon appellant's objection under the privileged communications statute, Code 1942, Sec. 1697.

At the conclusion of the evidence, appellant's request for a peremptory instruction was refused and the case was submitted to the jury under instructions which left to the determination of the jury the question as to whether or not appellant's injuries were caused or contributed to by the negligence of Miss Francis in applying the straps or in permitting them to remain so applied for such period of time as to injure the appellant. The jury returned a verdict for the appellees and judgment was rendered accordingly, and appellant prosecutes this appeal therefrom.

It is first complained by the appellant that the court erred in refusing her request for a peremptory instruction. This is the second appearance of this case in this Court. At the conclusion of the plaintiff's evidence in the former trial, the trial court sustained a motion of the defendants to exclude the evidence and peremptorily directed a verdict for the defendants. On appeal to this Court, the judgment of the trial court was reversed upon the ground that the evidence presented an issue for the jury, the Court saying: "The case presented by the record here rises above the domain of mere conjecture or possibility and presents facts and circumstances from which a jury might reasonably find that the appellees were guilty of negligence proximately contributing to appel-

lant's injury. It matters not whether our decision be grounded upon the doctrine of res ipsa loquitur as interpreted by some of the courts and textbook writers, or whether it be that the case here presented is based upon circumstantial evidence from which a reasonable inference or presumption of negligence may be drawn, we are nevertheless of the opinion that appellant's case should have been submitted to a jury for decision, and that consequently the exclusion of appellant's evidence and the direction of a verdict against her was erroneous." Palmer v. Clarksdale Hospital et al., 206 Miss. 680, 40 So. (2d) 582, 586.

The evidence for the appellant in the second trial was substantially the same as on the first trial and the former decision herein holding that the evidence presented a case for the jury is binding upon us as the law of the case. Biles et al. v. Webb, 195 Miss. 369, 15 So.(2d) 362; Boothe v. Teche Lines, Inc., 165 Miss. 343, 143 So. 418. We must for this reason therefore, if for no other, hold that the trial court committed no error in refusing appellant's request for a peremptory instruction. However, in view of the evidence, both for the appellant and the appellees on the second trial, we are of the opinion that issues of fact were thereby created which required the submission of the case to the jury, and that without regard to the former decision herein, the trial court was correct in refusing appellant's requested peremptory instruction.

It is further assigned as error that the trial court erred in granting to the appellees the following instructions:

"Instruction No. 3 for Defendants: The Court instructs the jury for the defendants that the defendants are in nowise responsible for the acts of the nurses Mrs. Fern Cobb and Mrs. R. M. Wood, who attended the plaintiff, and that the defendants are not responsible for anything that may have happened to the plaintiff while she was in the custody of her nurses."

"Instruction No. 8 for Defendants: The court instructs the jury for the defendants that if you believe from the evidence that the alleged injuries of the plaintiff were caused from a hot water bottle, then it is your sworn duty to find for the defendants."

It is argued that there was no evidence upon which to base the foregoing instructions. We do not concur in this contention. The undisputed evidence was that the hot water bottle was applied to appellant's feet by Mrs. Cobb, her privately employed nurse. The evidence for the appellees was that no injury such as appellant suffered had ever been known to result from the use of straps of the type used and that burns from the use of hot water bottles were known to occur, and further, that appellant's physician, Dr. Barrett, had expressed the opinion to Miss Francis and Mrs. Wood that appellant's injury was caused by the hot water bottle. The only reasonable inferences to be deduced from the evidence were that appellant's injuries were caused either by the straps or the hot water bottle. The vital issue in the case, therefore, was which of these two factors caused or contributed to appellant's injuries. We think that the evidence was sufficient to go to the jury for the determination of this issue and that the instructions complained of were directed to this issue and were properly granted.

It is also contended by the appellant that the trial court erred in refusing to permit her to show on cross-examination of the witness, N. C. Boyle, that the insurance firm of which he was a member represented the insurance company which carried the liability insurance of the appellee hospital. Appellant's purpose was thus to prove the bias, motive and interest of the witness. ▮▮ It is, of course, ordinarily competent to show the bias, motive or interest of a witness as affecting his credibility. The testimony of the witness Boyle, however, was directed solely to the question as to whether or not the appellee hospital was a charitable institution. This question was wholly eliminated from the case by an in-

struction requested by and granted to appellant which instructed the jury that whether or not the appellee hospital was a charitable institution was not an issue for the jury. The credibility of the witness, therefore, on this issue ceased to be material and hence we are of the opinion that the ruling of the court on this matter, whether right or wrong, does not constitute reversible error.

We deem it unnecessary to discuss the other assignments of error further than to say that we have duly and carefully considered the same and find no reversible error therein.

We are accordingly of the opinion that the judgment of the court below should be and it is affirmed.

Affirmed.

**Roberds, Alexander, Hall,** and **Arrington, JJ.,** concur.