ELEUTERIO P. RODRÍGUEZ, demandante y recurrente, *v.* ANTONIO LEMA CUERVO, demandado y recurrido.

*Número:* 451 *Resuelto:* 5 de marzo de 1963

*Angel Viera Martínez,* abogado del recurrente; *F. M. Susoni,* abogado del recurrido.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

De acuerdo con las conclusiones de hecho de la ilustrada Sala sentenciadora, el día 10 de julio de 1953, el recurrente firmó un contrato de arrendamiento para ocupar una casa de tres plantas, propiedad del recurrido, en cuyo contrato

se hacía constar que los aparatos sanitarios estaban en perfecto estado de funcionamiento. El recurrente estableció su residencia en la primera planta y en las otras dos continuó el negocio de hospedaje que tenía el anterior arrendatario. El recurrente empezó a recibir quejas de sus huéspedes sobre el servicio de agua y luz; efectivamente, la instalación eléctrica se iba deteriorando; algunos tubos de agua se taparon parcialmente y otros aparatos sanitarios se dañaron. Hay prueba testifical, en el sentido, que el recurrente, en una o dos ocasiones, protestó verbalmente sobre estas deficiencias sin que el recurrido hiciera las reparaciones consabidas. Los huéspedes empezaron a disgustarse y a marcharse, pero no fue hasta el 18 de marzo de 1954 que el recurrente gestionó que un oficial de la Administración de Estabilización Económica fuera a inspeccionar la casa. El informe de esa inspección aparece notificado en abril de 1954 pero solamente al recurrente.

El día 6 de abril de 1954, por conducto de un abogado, el recurrente le escribió al recurrido sobre la condición peligrosa de la instalación eléctrica concediéndole un plazo de cinco días para proceder a la reparación correspondiente, o de lo contrario, le haría responsable de los daños y perjuicios que se causaren y que el recurrente procedería a hacer las reparaciones y a descontar el costo de las mismas de los cánones de arrendamiento. Esta carta fue recibida por el recurrido el 8 de abril de 1954 y copias de la misma le fueron remitidas al Jefe del Servicio de Bomberos y a la Administración de Estabilización Económica.

El día 9 de abril de 1954 el recurrente le envió al recurrido una carta firmada por el propio recurrente informándole que ese mismo día, la Autoridad de las Fuentes Fluviales le había concedido al recurrente un término de quince días para corregir los *defectos* de la instalación eléctrica, pidiéndole al recurrido que arreglara dichos defectos sin dilación; que el día antes el Jefe del Servicio de Bomberos de Puerto Rico le escribió una carta al recurrido notificándole

las *deficiencias* encontradas en el sistema eléctrico y solicitando que se corrigieran a la mayor brevedad posible y el día 12 de abril el recurrido acusó recibo de la carta del Jefe de Bomberos y le comunicó que las deficiencias serían corregidas inmediatamente por Godofredo Ortiz, electricista autorizado.

El día 15 de abril de 1954 el recurrente, por medio de su abogado le envió al recurrido otra carta llamándole la atención sobre el *mal estado* de la instalación eléctrica del edificio e informándole que los huéspedes del demandante habían abandonado sus habitaciones, sufriendo el recurrente daños por no menos de dos mil dólares, y que habiendo el recurrido dejado de cumplir con sus obligaciones como [sic] arrendatario (¿arrendador?), el abogado le había instruido a su cliente, el recurrente desalojar el local arrendado, dejando al recurrente en libertad de reclamar daños y perjuicios si el recurrido insistía en hacer cualquier reclamación fundada en el contrato de arrendamiento. Efectivamente, el recurrente desalojó la casa y el 28 de abril de 1954, o sea, antes de vencer el arrendamiento concertado por un año, le entregó las llaves al recurrido.

Frente a estos hechos, la ilustrada Sala sentenciadora declaró sin lugar la petición de daños en incumplimiento del contrato de arrendamiento por parte del arrendador por el fundamento que cuando sean necesarias cualesquiera reparaciones, de acuerdo con el Art. 10 de la Ley Núm. 464 de 25 de abril de 1946, el arrendatario debe notificar por escrito al arrendador, y desde luego notificar también al Administrador de Estabilización Económica para que si el arrendador no efectuara voluntariamente las reparaciones, se cite a las partes a una vista, y si la necesidad de tales reparaciones quedare demostrada, ordenarle al propietario que las lleve a cabo. Si el propietario no las hace en el término concedídole, el Administrador autorizará al inquilino para que las haga, descontando su importe de los cánones de arrendamiento, en la forma que determine el Administrador.

En este caso—continúa la ilustrada Sala sentenciadora— el inquilino "no notificó oportunamente por escrito al demandado, como casero, de las deficiencias en los servicios que el casero venía obligado a mantener. El demandante permitió voluntariamente que la situación surgiera y se agravara sin seguir el procedimiento fijado por la Ley, y ahora no puede con derecho pedirle al Tribunal que condene al casero a indemnizarlo".

En su recurso de revisión, el inquilino plantea que: "El Tribunal sentenciador cometió grave error al concluir como cuestión de derecho que no procede la acción de daños y perjuicios porque el inquilino no notificara oportunamente al casero *por escrito* de las deficiencias en los servicios que el casero venía obligado a mantener, no obstante haber concluido que antes de las notificaciones escritas hechas en abril de 1954, el demandante recurrente había formulado protestas verbales sobre las deficiencias pero el arrendador no hizo las reparaciones."

La ley aplicable al caso es el Art. 10 de la Ley Núm. 464 de 25 de abril de 1946, —17 L.P.R.A., sec. 190—que dispone: "El arrendador está obligado a hacer en la propiedad alquilada todas las reparaciones necesarias durante el arrendamiento a fin de conservarla en estado de servir para el uso a que ha sido destinada, y mantener en funcionamiento todos sus servicios; *Disponiéndose*, que si el arrendador no hiciere las reparaciones necesarias ni mantuviere en funcionamiento los servicios, según aquí se determina, después de haber sido requerido para ello mediante notificación por escrito de un oficial de Sanidad o del inquilino, el Administrador citará a audiencia al propietario y al inquilino para determinar la necesidad de las reparaciones, y comprobada aquélla, fijará el importe razonable de las mismas y ordenará al propietario para que las lleve a cabo; *Disponiéndose*, que si el propietario no hiciere dichas reparaciones en el término fijado por el Administrador, éste autorizará al inquilino para que las haga y deduzca su

importe del alquiler en la forma que a ese efecto determine dicho Administrador. El propietario no vendrá obligado a efectuar reparaciones que resulten necesarias por razón de daños maliciosos causados por el inquilino."

De acuerdo con la teoría del inquilino recurrente dicha disposición de ley no es aplicable porque no crea una acción de daños y perjuicios cuando el arrendador teniendo conocimiento de la necesidad de las reparaciones no las lleva a cabo, que es la situación de hechos planteada en el caso; que la acción de daños surge de la falta de cumplimiento por el arrendador de su obligación de hacer en la casa arrendada las reparaciones necesarias desde el momento en que tiene conocimiento de las deficiencias y tal acción se rige por las disposiciones del Código Civil que regula las relaciones arrendaticias y las acciones de daños causados por negligencia u omisión del arrendador de cumplir sus obligaciones legales con el arrendatario.

De prevalecer la teoría del inquilino recurrente, los artículos del Código Civil de Puerto Rico que serían aplicables a la cuestión litigiosa, son los siguientes: El Art. 1444—31 L.P.R.A. sec. 4051—que dispone: El arrendador está obligado a hacer en la cosa objeto del contrato las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada; el Art. 1449—31 L.P.R.A. sec. 4056—que dispone: El arrendatario está obligado a poner en conocimiento del propietario, dentro del más breve plazo posible la necesidad de todas las reparaciones comprendidas en el Art. 1470, siendo responsable el arrendatario de los daños y perjuicios que por su negligencia al no notificar a tiempo la necesidad de tales reparaciones ocasione al propietario y el Art. 1446—31 L.P.R.A. sec. 4053—que dispone, si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en los Arts. 1444 referentes al arrendador y 1445 referentes al arrendatario, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente.

Para obtener un cuadro más preciso de la concordancia doctrinal de ciertas disposiciones referentes al arrendamiento, debemos añadir por nuestra cuenta, el Art. 1470 —31 L.P.R.A. sec. 4091—que dispone: En defecto de pacto especial en el contrato de arrendamiento, para las reparaciones de los predios urbanos que deban ser de cuenta del propietario, se estará a la costumbre del pueblo y en caso de duda se entenderán de cargo del propietario; el Art. 1448 —31 L.P.R.A. sec. 4055—que dispone: Si durante el arrendamiento es necesario hacer alguna reparación urgente en la cosa arrendada que no pueda diferirse hasta la conclusión del arriendo, tiene el arrendatario obligación de tolerar la obra aunque le sea molesta y aunque durante ella se vea privado de una parte de la finca y si la obra es de tal naturaleza que hace inhabitable la parte que el arrendatario y su familia necesitan para su habitación, puede el arrendatario rescindir el contrato y el Art. 1807—31 L.P.R.A. sec. 5146—que dispone: El propietario de un edificio es responsable de los daños que resulten de la ruina de todo o parte del edificio si tal ruina sobreviene por falta de las reparaciones necesarias.

■ Si bien nuestra obligación judicial es armonizar, cuando esto sea posible, las disposiciones en contrario de dos estatutos sobre la misma cuestión, no debemos olvidar que cuando se trata de disposiciones especiales y disposiciones generales, las primeras prevalecen sobre las segundas en todo aquello expresamente cubierto por las disposiciones especiales. Siendo esto así, es claro que el Art. 10 de la Ley Núm. 464 de 25 de abril de 1946, en todo lo relacionado con las *reparaciones necesarias*, sustituye las disposiciones de los Arts. 1444, 1446 y 1449 del Código Civil de Puerto Rico (1930).

En cuanto a la obligación del arrendador de conservar la cosa arrendada en estado de servir para el uso a que ha sido destinada, el *Disponiéndose* del Art. 10 de la Ley Núm. 464 establece un nuevo medio mediante el cual el Adminis-

trador de Estabilización Económica puede obligar al arrendador a cumplir con esta obligación determinando la necesidad de tales reparaciones, fijando el importe razonable de las mismas y ordenando al arrendador a efectuar las mismas dentro de un término fijado por el Administrador y si el arrendador no las hiciera, autorizando al inquilino a realizarlas por su cuenta con cargo al arrendador.

■ En cuanto a la notificación del arrendatario al arrendador de la necesidad de tales reparaciones, que de acuerdo con los Arts. 1470 y 1449 del Código Civil de Puerto Rico podía hacerse verbalmente o por escrito—10 Manresa, *Comentarios al Código Civil Español* 585 (edición Reus 1950)—el primer *Disponiéndose* del Art. 10 de la Ley Núm. 464 le exige al arrendatario hacer la notificación al arrendador por escrito. Otra vez se consagra legislativamente el deber de diligencia impuesto al arrendatario por ser la persona que mantiene "relación más directa e inmediata con la cosa durante el tiempo del contrato" (Manresa pág. 584).

■ En cuanto a los daños por incumplimiento por parte del arrendador del deber de hacer reparaciones ordinarias, inspirada como lo está la Ley de Alquileres Razonables de Puerto Rico en el principio de evitar el "abuso del derecho", o sea, evitar aquella situación jurídica que no obstante su legalidad dentro del curso ordinario de la contratación resulta en una evidente desigualdad entre las prestaciones, debemos tener presente, al interpretar la norma clásica, el ánimo reparador de la reforma intentada por la norma contemporánea para lograr una bien equilibrada distribución de la justicia. Es indudable que el nuevo método coercitivo contenido en el Art. 10 de la Ley Núm. 464 no deja hoy al arbitrio de las partes, en cuanto a reparaciones ordinarias se refiere, cualquier causa de daño que tanto la desidia del arrendador como la malicia del arrendatario pueda producir. Cualquier "abuso del derecho" por parte del arrendador está hoy neutralizado por los remedios rápidos y eficaces provistos en favor del inquilino para obtener dichas reparaciones ordina-

620

rias, incluso con la intervención del Estado. Además habiendo consagrado nuestra jurisprudencia el deber de mitigar los daños por aquellos que deban sufrirlos: *Ortiz* v. *McCormick Steamship Co.*, 57 D.P.R. 560 (Hutchison) (1940), cita precisa a la pág. 566, el cuadro de hechos que presenta este caso no nos hubiera convencido de su compensabilidad aun dentro de la norma clásica.

Si se examina con algún detenimiento el texto de las notificaciones enviadas por el arrendatario en este caso, se ve claro, que éste lo que buscaba era una forma de rescindir el contrato sin quedar sometido al pago de renta y a los daños provistos para la rescisión mejor que obtener las reparaciones del edificio arrendado. La prueba demuestra que las notificaciones verbales de las deficiencias, fueron atendidas por el arrendador en la forma usual, de acuerdo con la costumbre, enviando a un obrero de su negocio a reparar los aparatos sanitarios y las instalaciones eléctricas.

*Debe confirmarse la sentencia dictada en este caso.*