MARÍA FRANCISCA CASTRO, ETC., ET AL., Plaintiffs and Appellees, *v.* MUNICIPALITY OF GUÁNICA, ETC., Defendant and Appellant.

No. R-62-71.  Decided March 15, 1963.

*Canales & Segarra* and *José F. Quetglas Álvarez* for appellant. *Luis Nieves López* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Although after weighing the evidence introduced, including the expert testimony offered by the moving party, the trial court determined as a question of law that "there is no convincing evidence that plaintiff's present condition is the consequence of the injection" administered by a nurse of the public charity hospital of Guánica, it imposed liability to that municipality under the doctrine of *res ipsa loquitur* on the ground that it is a case "in which the aggrieved party was unconscious and the circumstances were such that the evidence on the real cause of the damage is accessible to defendant but not to the aggrieved party." [1]   We agreed to review the judgment awarding to plaintiff compensation of $1,689.50 and $200 for attorney's fees.

---

[1] It is well to clarify that the complaint contained specific allegations of negligence: "(1) Permitting a nurse to administer injections in serious cases calling for care, as in the instant case, which should be under super-

Plaintiff María Francisca Castro fainted while attending a neighbor's funeral. She was removed unconscious to the municipal hospital of Guánica where she was assisted by a practical nurse. Although the trial court made no determination on the matter, from the evidence presented it appears that the nurse received instructions from a physician to administer a sodium luminal injection to the patient, since the symptoms which she presented were those of an attack of hysteria. She applied it on the upper part of the left buttock, in the presence of plaintiff's husband and of a friend using a hypodermic needle three fourths inch long. Claimant experienced pain on the left leg and afterwards underwent medical treatment. Dr. Joseph Brinz, neurologist, examined her about 16 months after this incident and diagnosed her ailment as causalgia, which is "an injury to the peripheral nerves, more practically of the sciatic nerve, due to a puncture wound of that nerve." He stated that the injury may have been produced by any class of instrument, including a needle, as a result of a fall or blow received on the gluteal region. The following dialogue took place in the course of the cross-examination:

"Can you assure the Hon. Court that that specific causalgia which plaintiff is suffering was due to a needle?

"I would not dare, I would not dare say that.

.        .        .        .        .        .        .

"The fact is that you can not tell the Hon. Court that the trouble with the lady was due actually to a needle which affected the nerve.

---

vision of a duly accredited physician; (2) Failure to have available in the hospital an authorized physician to attend emergency cases; (3) **Fail**-ure to exercise due vigilance and supervision in the municipal charity service; [and] (4) Employing incompetent nurses with serious risk to the health and even the life of insolvent patients who go to that hospital." Apparently the trial court thought that there was no evidence on these facts or that they were not negligent acts, since it sustained the complaint by applying the rule of *res ipsa loquitur.*

"Since I could not say categorically, I could not deny it either."

He also testified that plaintiff's sciatic nerve is about two inches deep and the seriouness of the injury depends on the degree of penetration of the affected nerve.

In general terms, a practising nurse [2] should exercise a certain standard of reasonable care to see that no unnecessary harm comes to the patient. *Larrimore* v. *Homeopathic Hospital Ass'n of Del.*, 181 A.2d 573, 576-77 (Del. 1962); *Oldis* v. *La Societe Francaise De Bienfaisance Mutelle*, 279 P.2d 184 (Cal. 1955); *Ybarra* v. *Spangard*, 154 P.2d 687 (Cal. 1944). See *Carrasquillo* v. *Am. Missionary Association*, 61 P.R.R. 837 (1943), and *Pérez* v. *Municipality of Mayagüez*, *ante*, p. 589.[3] This standard of care should be the same as the standard of care exercised by other nurses in the locality or similar localities. *Cooper* v. *National Motor Bearing Co.*, 288 P.2d 581 (Cal. 1955); *cf. Sáez* v. *Municipality of Ponce*, 84 P.R.R. 515 (1962), especially footnote 5; and *Rivera* v. *Dunscombe*, 73 P.R.R. 764, 783 (1952). Hardly a few days ago, in *Pérez* v. *Municipality of Mayagüez, supra*, we affirmed a judgment exonerating a municipality from liability for the death of a girl following the administration of an antitetanic injection, and to that end we considered, among others, that the practice prevailing in the community for such cases had been followed. In general, Annotation, *Nurse's liability for her own negligence or malpractice*, 51 A.L.R.2d 970 (1957).

---

[2] In Puerto Rico the Legislative Assembly has regulated the practice of the profession of graduate nurses—Act No. 77 of May 15, 1930, 20 L.P.R.A. § § 191–201—as well as that of practical nurses—Act No. 427 of April 23, 1946, 20 L.P.R.A. § § 221–232; Act No. 86 of June 23, 1956, 20 L.P.R.A. § 233; and Act No. 113 of June 30, 1957, 20 L.P.R.A. § 234. See, also, Regulations for Nurse Aide Schools, approved March 16, 1948, 20 R.&R.P.R. § § 221–301 to 221–347.

[3] Although *Hernández* v. *The Capital*, 81 P.R.R. 998, 1004–05 (1960), involved the passing of judgment on the actions of a public hospital nurse for the purpose of fixing liability, it was decided only on the basis of standards governing liability of hospitals.

694

In appropriate circumstances, a nurse's liability has been determined by applying the doctrine of *res ipsa loquitur.*[4] In *Leonard* v. *Watsonville Community Hospital*, 291 P.2d 496 (Cal. 1956), a clamp was left in the patient's abdomen during the operation, but the court refused to instruct the jury on the doctrine in view of the fact that the evidence showed that although the nurse handed the clamps and instruments to the surgeon, she was not instructed to maintain a count of them, except needles. *Oldis* v. *La Societe Francaise De Bienfaisance Mutuelle*, 279 P.2d 184 (Cal. 1955), the facts of which are very similar to *Carrasquillo* v. *Am. Missionary Association*, 61 P.R.R. 837 (1943), illustrates the application of the rule to a case in which a patient suffered severe burns some time following an operation while she was in a semiconscious state and under the effects of drugs. See, also, *Palmer* v. *Clarksdale Hospital*, 57 So. 2d 473 (Miss. 1952). And in *Ybarra* v. *Spangard, supra,* in which a patient sustained an injury on a shoulder in the course of an appendectomy, liability was imposed to the hospital, to the surgeon and to the nurses who participated therein, stating that the rule applied even if the injury had been caused by one or more of the defendants or by any instrumentality used during the operation.

■■ However, having established that the doctrine of *res ipsa loquitur* may be applied for the purpose of determining a nurse's professional liability, we must not forget that the effect of this rule of evidence is to establish *a per-*

---

[4] In their most recent work, The Parenchyma of Law, Professional Medical Publications ed. (1960), pp. 263–85, LOUISELL and WILLIAMS point out that the increasing use of *res ipsa loquitur* in malpractice cases results from courts' convictions that it is essential to balance the scales of justice, in view of the difficulty encountered in procuring expert evidence for plaintiffs. See *Res Ipsa Loquitur in California Medical Malpractice Law—Expansion of a Doctrine to the Bursting Point*, 14 Stan. L. Rev. 251 (1962); *Res Ipsa Loquitur—Its Future in Medical Malpractice Cases*, 48 Cal. L. Rev. 252 (1960); Annotation, *Physicians and Surgeons res ipsa loquitur, or presumption or inference of negligence, in malpractice cases,* 82 A.L.R.2d 1262 (1962).

*missible inference* in favor of the moving party, according to our ruling in *Ramos* v. *Water Resources Authority*, 86 P.R.R. 572 (1962), and that the fact alone that plaintiff is unable to account for the cause of the accident does not imply that the doctrine necessarily applies. It is always necessary that the oft-mentioned three requirements be present—*Cintrón* v. *A. Roig, Sucrs.*, 74 P.R.R. 957, 964 (1953) ; *Hermida* v. *Feliciano*, 62 P.R.R. 54 (1943) : (1) that the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within defendant's exclusive control; and (3) it must not have been due to any voluntary or negligent action of plaintiff. An examination of the conclusion of law on which the determination of liability made by the trial court is founded shows that requirements 2 and 3 are met in the present case, since, assuming the position most favorable to plaintiff, (a) the injury was caused while the aggrieved party was unconscious, and it can not therefore be attributed to any voluntary or negligent action on her part; and (b) the explanation of the cause is more accessible to defendant, which is a way of saying that it had control of the agency or instrumentality which caused the injury. There is no specific finding of fact to establish that the accident is of such a kind that it would not occur in the absence of someone's negligence .[5] However, we could assume, for the purpose of disposing of this case, that it is a matter of common knowledge among laymen that injections

---

[5] There is a marked conflict in the decisions of the American courts on the need of establishing this fact by expert evidence exclusively. For an excellent discussion of this aspect of the evidence in malpractice cases, see *Voss* v. *Bridwell*, 364 P.2d 955, 968–71 (Kan. 1961), and also 35 Temp. L. Q. 221 (1962) ; 81 A.L.R.2d 597 (1962).

We have seen that plaintiff had access to the testimony of an expert who merely testified on the possibility, *among others*, that the injury was due to the penetration of a needle in the sciatic nerve, and that when he was confronted with plaintiff's specific situation he expressly refused to infer a causal relation between the nurse's act and the damage claimed by plaintiff.

in the arms and in the buttocks do not ordinarily cause trouble unless unskilfully done or there is something wrong with the serum or substance. *Wolfsmith* v. *Marsh*, 337 P.2d 70 (Cal. 1959); *Bauer* v. *Otis*, 284 P.2d 133 (Cal. 1955); *cf. Horace* v. *Weyrauch*, 324 P.2d 666 (Cal. 1958); and *Toy* v. *Rickert*, 146 A.2d 510 (N.J. 1958).[6]

██ However, irrespective of the foregoing, our opinion is that the inference of negligence which may have arisen by the application of the rule of *res ipsa loquitur* vanished by virtue of the evidence presented by defendant which established uncontrovertedly (a) that the hypodermic needle used by the nurse could not, because of its size, penetrate so deep as to affect the sciatic nerve; and (b) that the injection was administered on the external upper part of the buttock, where they are admittedly administered. We are convinced by the trial court's statements in sustaining the complaint on the basis of the application of the said doctrine that it attributed the effect, not of a mere evidentiary order, but of a substantive rule of liability. This is particularly true because, in the absence of a determination on the causal relation between the damage claimed and the act of giving the injection, as stated by the trial court, the doctrine in question should not have even been applied.

The judgment rendered by the Superior Court, Ponce Part, on February 23, 1962, will be reversed and the complaint dismissed.

---

[6] The decisions in *Wolfsmith* and *Bauer* have been classed as exponents of the "rarity" principle for the application of the rule of *res ipsa loquitur*, and criticized as an undue risk to the medical profession. 14 Stan. L. Rev. 251, 273-80 (1962).