MARÍA FRANCISCA CASTRO, ETC., ET AL., demandantes y recurridos, *v.* MUNICIPIO DE GUÁNICA, ETC., demandado y recurrente.

*Número:* R–62–71 *Resuelto:* 15 de marzo de 1963

*Canales & Segarra* y *José F. Quetglas Álvarez,* abogados del recurrente; *Luis Nieves López,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

A pesar de que el tribunal de instancia determinó como cuestión de hecho, después de apreciar la prueba presentada incluyendo el testimonio pericial ofrecido por la parte actora, que "[n]o hay prueba fehaciente de que el estado actual de la demandante sea consecuencia de la inyección" que le fue administrada por una enfermera en el hospital de beneficencia pública de Guánica, le impuso responsabilidad a dicho municipio invocando la doctrina de *res ipsa loquitur* porque se trata de un caso "en que el perjudicado estaba inconsciente y las circunstancias son tales que la evidencia de la verdadera causa del daño es accesible al demandado y no al perjudicado."(¹) Acordamos revisar la sentencia que concedió a la parte demandante una compensación de $1,689.50 y $200 para honorarios de abogado.

Mientras asistía a los funerales de un convecino la demandante María Francisca Castro sufrió un desmayo. Fue conducida en estado de inconsciencia al hospital municipal de Guánica en donde fue atendida por una enfermera práctica. Aunque el tribunal de instancia no hizo una determinación sobre el particular, de la prueba presentada aparece que la enfermera mencionada recibió instrucciones de un doctor para que le administrara a la paciente una inyección de luminal sódico, pues los síntomas que presentaba eran los de un ataque de histeria. Así lo hizo en la parte superior de la nalga izquierda, en presencia del esposo y de un amigo de la demandante, utilizando para ello una aguja

---

(¹) Conviene aclarar que en la demanda se hicieron alegaciones específicas de negligencia: "(1) Permitir que una enfermera ponga inyecciones en casos delicados y de cuidado, como en el presente, cuando esto debe estar a cargo de un médico debidamente acreditado; (2) No tener disponible en el hospital un médico autorizado para atender los casos de emergencia que llegan al mismo; (3) No ejercer la debida vigilancia y supervisión en el Servicio Municipal de Beneficencia; [y] (4) Emplear enfermeras incompetentes e incapacitadas con grave riesgo de la salud y hasta de la vida de los pacientes insolventes que acuden a dicho hospital." Aparentemente el tribunal a quo entendió que no hubo prueba sobre estos hechos o que no constituían actos negligentes, pues declaró la demanda con lugar mediante la aplicación de la regla de *res ipsa loquitur*.

hipodérmica de tres cuartos de pulgada. La reclamante experimentó dolor en la pierna izquierda y fue luego sometida a tratamiento médico. El doctor Joseph Brinz, neurólogo, la examinó unos dieciséis meses después de este incidente, y dictaminó que tenía causología, o sea, "una lesión de los nervios perifénicos, más prácticamente del nervio ciático debido a herida penetrante de ese nervio." Indicó que la herida puede haberse producido por cualquier clase de instrumento, incluyendo una aguja, como consecuencia de una caída o por haber recibido un golpe en la región glútea. En el curso del contrainterrogatorio ocurrió el siguiente diálogo:

"¿ Usted le podría asegurar al Hon. Tribunal que esa causología específica que tiene la demandante se debió a una aguja?

Yo no me atrevo, no me atrevería a decir eso.

. . . . . . . .

Lo cierto es que usted no le puede decir al Hon. Tribunal que lo que tiene esa señora se debió de hecho a una aguja que le interesó el nervio.

Como yo no podría asegurarlo categóricamente, tampoco podría negarlo."

Declaró además que el nervio ciático de la demandante se encuentra a una distancia de aproximadamente dos pulgadas de profundidad y que la gravedad de la lesión depende del grado de penetración del nervio afectado.

■ En términos generales, una enfermera en el ejercicio de su profesión[2] debe ejercitar un grado de cuidado razonable para evitar causar daño innecesario al paciente. *Larrimore* v. *Homeopathic Hospital Ass'n of Del.*, 181 A.2d

---

[2] En Puerto Rico, la Asamblea Legislativa ha reglamentado tanto el ejercicio de la profesión de enfermera graduada—Ley Núm. 77 de 15 de mayo de 1930, 20 L.P.R.A. secs. 191-201—, como las enfermeras prácticas —Ley Núm. 427 de 23 de abril de 1946, 20 L.P.R.A. secs. 221-232; Ley Núm. 86 de 23 de junio de 1956, 20 L.P.R.A. sec. 233; y Ley Núm. 113 de 30 de junio de 1957, 20 L.P.R.A. sec. 234. Véase, además, el Reglamento para Escuelas de Enfermeras Auxiliares, aprobado en 16 de marzo de 1948, 20 R.&R.P.R. secs. 221-301 a 221-347.

573, 576-577 (Del. 1962); *Oldis* v. *La Societé Francaise De Bienfaisance Mutuelle*, 279 P.2d 184 (Cal. 1955); *Ibarra* v. *Spangard*, 154 P.2d 687 (Cal. 1944). Véanse, *Carrasquillo* v. *Am. Missionary Association*, 61 D.P.R. 867 (1943) y *Pérez* v. *Municipio de Mayagüez*, 87 D.P.R. 615 (1963).[3] Este grado de cuidado debe responder al grado de cuidado ejercitado por otras enfermeras de la localidad o en localidades similares. *Cooper* v. *National Motor Bearing Co.*, 288 P.2d 581 (Cal. 1955); cfr. *Sáez* v. *Municipio de Ponce*, 84 D.P.R. 535 (1962), especialmente el escolio 5, y *Rivera* v. *Dunscombe*, 73 D.P.R. 819, 838 (1952). Hace apenas unos días, en *Pérez* v. *Municipio de Mayagüez*, supra, confirmamos una sentencia por la cual se exoneró a un municipio de responsabilidad por la muerte sobrevenida a una niña después de la administración de una inyección antitetánica, y para ello consideramos, entre otras cosas, que se había seguido la práctica prevaleciente en la comunidad para tales casos. En general, Anotación, *Nurse's liability for her own negligence or malpractice*, 51 A.L.R.2d 970 (1957).

En circunstancias apropiadas, la responsabilidad de una enfermera se ha fijado mediante la aplicación de la doctrina de *res ipsa loquitur*.[4] En *Leonard* v. *Watsonville Community Hospital*, 291 P.2d 496 (Cal. 1956), se dejó una

---

[3] *Hernández* v. *Gobierno de la Capital*, 81 D.P.R. 1031 (1960), aunque envolvía el enjuiciamiento de las actuaciones de una enfermera de un hospital público a los fines de la determinación de responsabilidad, fue resuelto considerando únicamente las normas para determinar la responsabilidad de hospitales, a las págs. 1037 y 1038.

[4] En su más reciente obra, *The Parenchyma of Law*, ed. Professional Medical Publications (1960), págs. 263-285, Louisell y Williams señalan que la más frecuente aplicación de *res ipsa loquitur* a casos sobre responsabilidad profesional (*malpractice*) obedece al deseo de los tribunales de equilibrar la balanza de la justicia en vista de la dificultad con que se enfrentan los demandantes para lograr el beneficio de la presentación de prueba pericial. Véase, *Res Ipsa Loquitur in California Medical Malpractice Law—Expansion of a Doctrine to the Bursting Point*, 14 Stan. L. Rev. 251 (1962); *Res Ipsa Loquitur—Its Future in Medical Malpractice Cases*, 48 Cal. L. Rev. 252 (1960); Anotación, *Physicians and Surgeons res ipsa loquitur, or presumption or inference of negligence in malpractice cases*, 82 A.L.R.2d 1262 (1962).

pinza en el abdomen del paciente en el curso de una operación, pero el tribunal se negó a instruir al jurado sobre la doctrina en vista de que la prueba demostraba que si bien la enfermera suplía las pinzas y los instrumentos al cirujano, no había sido instruida para que llevara una cuenta de éstos, con excepción de las agujas utilizadas. *Oldis v. La Societé Francaise De Bienfaisance Mutuelle*, 279 P.2d 184 (Cal. 1955), muy similar en sus hechos a *Carrasquillo v. Am. Missionary Association*, supra, ilustra la aplicación de la regla a un caso en que el paciente sufrió quemaduras graves en algún momento después de habérsele practicado una operación durante un período en que se encontraba semiconsciente y bajo los efectos de drogas. Véase, también, *Palmer v. Clarksdale Hospital*, 57 So.2d 473 (Miss. 1952). Y en *Ybarra v. Spangard*, supra, en que un paciente sufrió una lesión en un hombro durante el curso de una apendectomía, se impuso responsabilidad al hospital, al cirujano y a las enfermeras que participaron en la misma, indicándose que la regla era aplicable aun cuando el daño pudiera haber sido causado por uno o más de los demandados o por cualquiera de los instrumentos utilizados durante la operación.

Ahora bien, establecido que la doctrina de *res ipsa loquitur* puede aplicarse a los fines de determinar la responsabilidad profesional de una enfermera, no debemos olvidar que el efecto de esta regla de evidencia es establecer *una inferencia permisible* a favor de la parte actora, según resolvimos en *Ramos v. Autoridad de Fuentes Fluviales*, 86 D.P.R. 603 (1962), y que el mero hecho de que el demandante no pueda explicar la causa del accidente no implica que necesariamente proceda la aplicación de la doctrina. Siempre es necesario que concurran los tres requisitos a que hemos aludido en tantas ocasiones—*Cintrón v. A. Roig Sucrs.*, 74 D.P.R. 1028, 1036 (1953); *Hermida v. Feliciano*, 62 D.P.R. 55 (1943)—: (1) que el accidente debe ser de tal naturaleza que ordinariamente no ocurra en ausencia de negligencia de parte de alguna persona; (2) debe ser cau-

sado por una agencia o instrumento dentro del control del demandado; y, (3) no puede haber sucedido debido a una actuación voluntaria o negligente del demandante. Un examen de la conclusión de derecho en que se asienta la determinación de responsabilidad formulada por el tribunal de instancia demuestra que en el presente caso se satisfacen los requisitos 2 y 3, ya que, asumiendo la posición más favorable a la parte demandante, a) el daño se produjo mientras la perjudicada se encontraba inconsciente, y por tanto no puede atribuírsele a una actuación voluntaria o negligente suya; y, b) la explicación de la causa es más accesible al demandado, que es una forma de expresar que tenía el control de la agencia o instrumento productor de la lesión. No hay determinación de hecho específica para establecer que el accidente es de tal naturaleza que no ocurriría en ausencia de negligencia de alguna persona.[5] Sin embargo, podríamos asumir para los efectos de disponer de este caso que es materia de conocimiento común entre los legos que las inyecciones puestas en los brazos y en las nalgas usualmente no causan lesiones a menos que se administren sin pericia o que el suero o substancia no estuviere en buenas condiciones. *Wolfsmith* v. *March*, 337 P.2d 70 (Cal. 1959); *Bauer* v. *Otis*, 284 P.2d 133 (Cal. 1955); cfr. *Horace* v. *Weyrauch*, 324 P.2d 666 (Cal. 1958) y *Toy* v. *Rickert*, 146 A.2d 510 (N.J. 1958).[6]

---

[5] Existe un marcado conflicto en la jurisprudencia de las cortes de Estados Unidos sobre la necesidad de establecer este hecho mediante prueba pericial exclusivamente. Para una excelente discusión sobre este aspecto de la prueba en casos de "malpractice", véase, *Voss* v. *Bridwell*, 364 P.2d 955, 968-971 (Kan. 1961), y además, 35 Temp. L. Q. 221 (1962); 81 A.L.R.2d 597 (1962).

Hemos visto que la parte demandante tuvo a su disposición el testimonio de un perito, cuya declaración se limitó a indicar la posibilidad, *entre otras*, de que la lesión sufrida obedeciera a la penetración del nervio ciático por una aguja y que expresamente se negó, al confrontársele con el cuadro específico de la demandante, a derivar una relación causal entre el acto de la enfermera y el daño alegado por la demandante.

[6] Las decisiones en los casos de *Wolfsmith* y *Bauer* han sido calificadas como exponentes del concepto de "rareza" para la aplicación de

732

**■** Pero independientemente de lo expuesto, a nuestro juicio la inferencia de negligencia que pueda haber surgido mediante la aplicación de la regla de *res ipsa loquitur* se desvaneció ante la prueba presentada por la parte demandada que estableció en forma incontrovertida a) que la aguja hipodérmica utilizada por la enfermera no pudo, debido a su tamaño, penetrar hasta interesar el nervio ciático; y, b) que la inyección fue puesta en el cuadrante superior exterior de la nalga, sitio en que reconocidamente se administran las mismas. La forma en que se expresa el tribunal de instancia para declarar la demanda con lugar a base de la aplicación de la doctrina mencionada nos convence que le atribuyó el efecto, no ya de una mera inferencia de orden evidenciario, sino el de una regla sustantiva de responsabilidad. Ello es especialmente cierto porque, en ausencia de una determinación sobre relación causal entre el daño por el cual se reclama y el acto de poner la inyección según lo expresa el tribunal a quo, no procedía aplicar siquiera la referida doctrina.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 23 de febrero de 1962, y se desestimará la demanda.*

la regla de *res ipsa loquitur*, y criticados como un riesgo indebido para la profesión médica. 14 Stan. L. Rev. 251, 273-280 (1962).