Yaritza **TORRES–PÉREZ,**
et al., **Plaintiffs**

v.

**UNITED STATES of America,**
**Defendant.**

No. 06–2273 (JP).

United States District Court,
D. Puerto Rico.

Jan. 9, 2008.

John E. Mudd, Esq., John E. Mudd Law Office, San Juan, PR, for Plaintiffs.

Isabel Muñoz–Acosta, Esq., United States Attorney's Office, San Juan, PR, for Defendant.

### OPINION AND ORDER

JAIME PIERAS, JR., Senior District Judge.

## I. INTRODUCTION

Plaintiffs Yaritza Torres–Pérez, José Raúl Rodríguez–Hernández, the conjugal partnership Rodríguez–Torres, K.R.T. (a minor), J.R.T. (a minor), and R.R.T. (a minor), filed this action under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. Section 2670, et seq., against Defendant United States of America ("USA"). Plaintiff Yaritza Torres–Pérez ("Torres–Pérez") claims that her sciatic nerve was injured as a result of an improper injection technique performed by a nurse at the emergency ward of Camuy Health Services, Inc. ("CHS"), causing her a permanent disability.

A non-jury trial was held on December 13, 2007. Plaintiffs presented three witnesses: 1) Plaintiff Torres–Pérez, 2) Plain-

tiff José Raúl Rodríguez–Hernández, and 3) Dr. Boris Rojas as their expert witness. At the conclusion of Plaintiffs' case, Defendant USA moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c). The Court denied Defendant's motion and Defendant proceeded to present its case. Defendant USA called two witnesses: 1) Nurse María Sonera, and 2) Dr. Víctor Mojica as its expert witness. Upon conclusion of all the evidence, Defendant USA renewed its Rule 52(c) motion and submitted its case. At this time, Plaintiffs also moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52(c). Both motions were denied.

## II. *FINDINGS OF FACT*

1. Plaintiff Torres–Pérez is a twenty-three year old woman who is married to José Raúl Rodríguez–Hernández. They were married to each other at all times relevant to this lawsuit. They currently have three children together and Plaintiff is pregnant with their fourth child. They reside in Quebradillas, Puerto Rico. Plaintiff Torres–Pérez is not employed.

2. On August 16, 2003, Plaintiff Yaritza Torres–Pérez went to the emergency room at the Camuy Health Center. On that day she was complaining of headache, malaise and throat pain. She was seen by Dr. Sotomayor, who diagnosed her with viral syndrome and prescribed 200 mg of Tigan to be administered in the right upper quadrant of the buttock and four mg of Decadron to be injected in the left upper quadrant of the buttock. Nurse Sonera administered the injections.

3. Plaintiff Yaritza Torres–Pérez suffered pain when the injection was administered.

4. Four weeks later, on September 13, 2003, Plaintiff Torres–Pérez returned to the Camuy Health Center's emergency room with complaints of pain in her right hip radiating to her right buttock. Notes from this visit indicate that no neurologic defects were found. Plaintiff Torres–Pérez was given an injection of Kenalog in her right buttock and discharged home.

5. Plaintiff Yaritza Torres–Pérez suffered pain after the administration of the injection but did not go to the hospital expecting the pain to go away.

6. In October 2003, she returned to the Camuy Health Center on several occasions with complaints of hip and leg pain. An x-ray revealed a bone tumor in Plaintiff Torres–Pérez's femur, which a bone scan showed was suggestive of a benign fibrocortical defect. Plaintiff· was ordered an electromyogram ("EMG") test and nerve conduction rate ("NCR") study. The result of the EMG was positive to sciatic nerve injury.

7. Plaintiff Torres–Pérez continues to suffer pain as a result of the injection administered by Nurse Sonera. Specifically, she has difficulty remaining seated or standing for extended periods of time. She described the pain as not continuous, but rather as sporadic. The pain impairs ability to care for her children. Although Plaintiff is not currently employed, she testified that her disability will prevent her from obtaining future employment. Plaintiff Torres–Pérez did not suffer

any traumatic injury to her sciatic nerve before she received the injection.

8. Plaintiff's expert witness, Dr. Boris Rojas, a neurologist, testified that Plaintiff had no pre-existing medical history or intervening trauma to which the nerve damage could be attributed. He testified that sciatic nerve damage can be caused either by an improperly placed injection where the needle itself hits the nerve, or by a misplaced injection that does not hit the nerve itself, but rather is so close that it dispenses the medicine in such a way as for the medicine to injure the nerve. He stated that the nurse's record does not conclusively show that the injection was placed in the proper location.

9. Upon hearing all the evidence presented by both parties at trial, the Court finds that Plaintiff had no injuries or conditions that are known to produce injury to the sciatic nerve prior to receiving the injection at CHS. Plaintiff suffered injury to the sciatic nerve right at the moment when the injection was administered to her right buttock, either 1) directly to the sciatic nerve or 2) because the negligently misplaced injection came so close to the nerve that the liquid medicine released from the syringe touched the nerve and caused injury. Therefore, the cause of the injury was the misplaced injection that injured the nerve directly, and/or the misplaced injection which caused the toxic or caustic effect of the injected drug.

10. All of Plaintiff Yaritza Torres–Pérez's total damages as described herein amount to $150,000.00 for her pain and suffering.

11. Plaintiff José Raúl Rodríguez–Hernández, husband to Plaintiff Yaritza Torres–Pérez, suffered the following damages causing him great pain and suffering due to his wife's condition, in the amount of $20,000.00: seeing his wife become crippled; contributing more time to household chores and childcare in addition to financially supporting his family; loss of regular and adequate consortium.

### III. ANALYSIS

■ This case is brought under the Federal Tort Claims Act, 28 U.S.C. Section 2670, et seq. The Secretary of Health and Human Services deemed the hospital where Plaintiff Torres–Pérez received the injection eligible for FTCA coverage pursuant to the Federally Supported Health Centers Assistance Act on November 1, 2001. Under the FTCA, 28 U.S.C.S. Sections 2671–2680, the United States is liable for the negligent acts or omissions of its employees while acting within the scope of their employment, under circumstances where a private person would be liable pursuant to the law of the forum where the acts or omissions occurred. The applicable law to define the standard of fault and recovery is the law of the forum where the negligence occurs. *Otero v. United States*, 428 F.Supp.2d 34, 45 (D.P.R.2006). In this instant case, the law of Puerto Rico applies. *See Shuman v. United States*, 765 F.2d 283, 288 (1st Cir.1985); *Zabala Clemente v. United States*, 567 F.2d 1140, 1143 (1st Cir.1977).

In this jurisdiction, tort liability for medical malpractice arises under Article 1802 of the Civil Code of Puerto Rico, which states:

A person who by act or omission causes damages to another through fault or negligence shall be obliged to repair the

damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability but entails a reduction of the indemnity. P.R. Laws Ann. tit. 31 § 5141 (1991).

■ Under Puerto Rico law, three elements comprise a *prima facie* case of medical malpractice: a party must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm. *Otero*, 428 F.Supp.2d at 46, (citing *Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 167 (1st Cir.2005)).

### A. *Duty*

■ The Puerto Rico courts have explained the duty owed to a patient as that level of care which, recognizing the modern means of communication and education, meets the professional requirements generally acknowledged by the medical profession. *Otero*, 428 F.Supp.2d at 46; *see also Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 167 (1st Cir.2005) (citing *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir.1994)) (quoting *Oliveros v. Abreu*, 1 P.R. Offic. Trans. 293, 101 P.R. Dec. 209, 226 (1973)). The standard is considered national and must be proven through expert testimony. *Otero*, 428 F.Supp.2d at 46.

In terms of the standard of care owed by nurses in medical malpractice cases, the Puerto Rico Supreme Court stated that:
> With regard to the responsibility of nurses for acts or omissions, we have held that a nurse must exercise a degree of reasonable care to avoid causing unnecessary damage to the patient, and such degree of care must be equal to the degree of care exercised by other nurses in the locality or similar localities. *Blas Toledo Y Otros v. Hospital Nuestra Senora De La Guadalupe*, 146 D.P.R. 267, 307 (1998), (citing *Castro v. Municipio*

*De Guanica*, 87 D.P.R. 725, 728–729 (1963)).

After carefully reviewing all the evidence, the Court concludes that Nurse Sonera breached her duty of care towards Plaintiff Torres–Pérez. Dr. Rojas, the Plaintiffs' expert witness, testified that it is well-known in the medical field that misplaced gluteal injections are one of the leading causes of sciatic nerve injuries. For this reason, nurses performing such injections must take special care to ensure that the nerve is not damaged by the needle or by the excreted fluid. Nurse Sonera's records do not specify that the injection was placed in the superior *outer* quadrant of the Plaintiff's right buttocks. Nurse Sonera testified that she did not remember Plaintiff Torres–Pérez, nor any specific details from the injection she administered to Plaintiff.

The Court concludes, based on the testimony delivered by all witnesses, that Nurse Sonera did not comply with the standard of care demanded by the requirements generally acknowledged by the medical profession in the administration of the injection to Plaintiff Torres–Pérez.

### B. *Causation*

■ To establish causation under the law of Puerto Rico, a plaintiff must prove, by a preponderance of the evidence, that "the [medical provider's] negligent conduct was the factor that 'most probably' caused harm to the plaintiff." *Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 168 (1st Cir.2005). Causation usually cannot be found based on mere speculation and conjecture. Expert testimony is generally essential in order to clarify complicated medical issues that are more prevalent in medical malpractice cases than in standard negligence cases. *Otero*, 428 F.Supp.2d at 46. Therefore, Plaintiffs here must establish, by a preponderance of the evidence

and through expert testimony, that the nurse's negligent conduct was the factor that most probably caused the harm suffered by Plaintiff Torres–Pérez.

After examining all the evidence presented by both parties, the Court finds that there is a direct causal link between Nurse Sonera's injection into Plaintiff Torres–Pérez's right gluteus and the permanent injury to the sciatic nerve which ensued. Dr. Boris Rojas, the Plaintiffs' expert, explained to the Court the various potential origins of sciatic nerve damage, including stab wounds, lacerations, and trauma. He testified that Plaintiff's medical records do not contain any of these other possible sources of sciatic nerve damage, either prior to the injection date or during the period between the injection and Plaintiff Torres–Pérez's subsequent visit to CHS. Dr. Rojas also testified that misplaced gluteal injections are a common cause of sciatic nerve damage.

Dr. Rojas testified that nerve damage by a misplaced gluteal injection can either be caused by an injection directly into the sciatic nerve, or by toxic sciatic neuropathy, which occurs when a toxic substance comes into contact with a nerve and damages it. Dr. Rojas testified that Tigan, the drug injected by Nurse Sonera into Plaintiff's gluteus, can have a caustic effect given its chemical composition.

The parties agree that Plaintiff Torres–Pérez suffers sciatic nerve damage, based on the results of an EMG test. Dr. Rojas testified that, based on her medical records, Plaintiff Torres–Pérez manifested symptoms consistent with sciatic nerve damage on several emergency room visits after the injection was administered.

Given Dr. Rojas' testimony that Plaintiff suffered no history of sciatic nerve damage prior to the injection by Nurse Sonera, that gluteal injections are a known cause of sciatic nerve injury, and that Plaintiff suffered sciatic nerve damage with persistent pain after the injection, the Court finds that Plaintiffs have proven by a preponderance of the evidence that Nurse Sonera's misplaced injection was the factor that caused the harm suffered by Plaintiff Torres–Pérez. Nurse Sonera's breach of duty of care to her patient, Plaintiff Torres–Pérez, by improperly administering the injection, has caused Plaintiff to suffer chronic pain and impairment in her mobility. The Court finds that Nurse Sonera's breach in duty of care to Plaintiff is the proximate cause of Plaintiff's sciatic nerve injury.

## IV. *DAMAGES*

█ Plaintiff Torres–Pérez suffers from chronic pain related to the sciatic nerve damage caused by the misplaced injection. The pain is especially strong during periods of prolonged sitting or standing. The injury also prevents her from lifting objects and from reaching upwards. It is clear to the Court from Plaintiff's testimony and her appearance in Court that her general mobility is impaired.

Plaintiff Torres–Pérez testified that she did not complete a high school education, and that she has never been employed. She stated that she planned to seek employment at the time her youngest child reaches the age of ten, which is at least one decade away. Given her limited education, Plaintiff testified that she was planning to seek work in a store or restaurant, and that her disability will make it difficult for her to obtain such a position. The Court finds that the impact of the injury on Plaintiff Torres–Pérez's earning capacity is minimal and speculative, given that she did not anticipate working for another ten years and that she has no prior employment history.

Plaintiff Torres–Pérez and her husband, Plaintiff José Raúl Rodríguez–Hernández, have been married for approximately nine years. They claim that the nerve injury has caused a loss of consortium and a negative impact on their conjugal partnership. Plaintiffs had two children prior to the injury, and they had another child after the injury. Plaintiff Torres–Pérez is currently pregnant with the couple's fourth child. As such, the Court finds the Plaintiffs' loss of consortium argument unavailing.

Plaintiff José Raúl Rodríguez–Hernández testified that his wife's injury has impacted him because he must assume a greater level of responsibility in household matters. He is now responsible for completing chores that his wife once did. He testified that he also assumes a greater role in caring for his children because his wife is not physically able to fully care for the children, who are all younger than ten years old. The Court finds that Plaintiff José Raúl Rodríguez–Hernández is entitled to recover damages for his pain and suffering described herein.

Plaintiff Torres–Pérez's children did not testify. However, Plaintiff Torres–Pérez testified that she suffers emotional pain as a result of no longer being able to fully care for her children. She testified that she can no longer play and exercise with them as she used to because of her persistent nerve pain.

The Court finds that as a result of Plaintiff's chronic pain, and impaired relationship with her children, Plaintiffs Torres–Pérez and Plaintiff José Raúl Rodríguez–Hernández are entitled to pain and suffering damages.

## V. *CONCLUSION*

For the above reasons, the Court **AWARDS:**

a. Compensatory damages to Plaintiff Yaritza Torres–Pérez for her past, present, and future pain, suffering and emotional distress, **in the amount of $150,000.00;**

b. Compensatory damages to Plaintiff José Raúl Rodríguez–Hernández for the past, present, and future pain, suffering and emotional distress as a result of his wife's injury, **in the amount of $20,000.00;**

c. Compensatory damages are not awarded to any of Plaintiff Torres–Pérez's children;

d. Compensatory damages are not awarded to the conjugal partnership Rodríguez–Torres;

d. Plaintiffs are further entitled to costs and attorneys' fees, and interests after judgment. Judgment will be entered accordingly.

**IT IS SO ORDERED.**