669 So.2d 19 (1996)
Joe W. McLEMORE, Jr.
v.
STATE of Mississippi.
No. 92-CT-00463-SCT.
Supreme Court of Mississippi.
February 5, 1996.
*20 Pat Donald, Morton, for Appellant.
Michael C. Moore, Attorney General, Jean Smith Vaughan, Sp. Asst. Attorney General, Jackson, for Appellee.
En Banc.

ON PETITION FOR WRIT OF CERTIORARI
SULLIVAN, Presiding Justice, for the Court:
Joe W. McLemore, Jr. (McLemore) was indicted for the crimes of aggravated assault and armed robbery violating Miss. Code Ann. § 97-3-7(2)(b) and § 97-3-79 by the grand jury of Scott County Circuit Court in the February 1992 term. McLemore was also indicted as a habitual offender under Miss. Code Ann. § 99-19-81.
McLemore filed a motion for a change of venue on the grounds of his inability to obtain a fair trial because of pretrial publicity; the trial court granted the motion. The trial was held in the Newton County Circuit Court.
McLemore was convicted of one count of aggravated assault and one count of armed robbery. The trial court sentenced McLemore to twenty-five years in the Mississippi Department of Corrections without parole for the aggravated assault charge and sentenced him to twenty years without parole for the armed robbery charge. The sentences are to be served consecutively.
This case was assigned to the Court of Appeals, who affirmed the lower court's conviction on March 21, 1995. McLemore filed a *21 petition for rehearing on April 6, 1995, which the Court of Appeals denied on May 30, 1995. McLemore filed a petition for writ of certiorari on June 15, 1995, which we granted on August 14, 1995.

FACTS
On December 26, 1991, McLemore went into the Freddie Rogers Service Station & Grocery Store in Morton, Mississippi, where the clerk, Nadine Walker (Walker) was working alone. McLemore asked Walker for some fishing bait. Walker went to the bait shop, which was in an area separate from the store, and went to get a minnow bucket that was hanging from the ceiling. Walker testified that McLemore came up behind her and that she suddenly felt pain and knew that McLemore had cut her on her face. He then stabbed Walker in her left side. McLemore then headed to the cash register and tried to open it. When McLemore could not open the cash register, he headed toward Walker who then offered to open the cash register. While McLemore was taking the money from the cash register Walker was backing away and bumped into the telephone. This seemed to anger McLemore, who then stabbed Walker in the neck and a couple of times in the back.
After the stabbing, McLemore cut the telephone line, and then stabbed Walker several more times. Walker was stabbed approximately fifteen times. McLemore took around three hundred dollars from the cash register.
The crime took place in Scott County. However, due to the pretrial publicity about the crime, the lower court granted McLemore's motion for change of venue. The trial was held in the Newton County Circuit Court. After the jury heard all the evidence and closing arguments they found McLemore guilty. McLemore was being tried as a habitual offender; thus, the sentencing was held in a separate procedure. The trial court sentenced McLemore to twenty-five years in the custody of the Mississippi Department of Corrections without parole  for the conviction of aggravated assault  and to twenty years, without benefit of parole, on the armed robbery charge. McLemore filed a motion for a new trial, which was overruled by the lower court.
This case was assigned to the Court of Appeals, who affirmed the lower court's conviction on March 21, 1995. McLemore filed a petition for rehearing on April 6, 1995, which the Court of Appeals denied on May 30, 1995. McLemore filed a petition for writ of certiorari on June 15, 1995, which we granted on August 14, 1995.

I.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE STATE TO IMPROPERLY ARGUE TO THE JURY, DURING CLOSING ARGUMENT, THAT DEFENDANT'S PREVIOUS FOUR CONVICTIONS WERE SUBSTANTIVE EVIDENCE OF HIS ALLEGED GUILT OF THE CRIME CHARGED IN THE INDICTMENT, I.E., ARMED ROBBERY.
McLemore contends that the district attorney in closing arguments improperly argued to the jury that his four previous convictions for uttering forgery were substantive evidence of his guilt for the crime of armed robbery. McLemore testified about his previous convictions and McLemore's attorney brought up the prior convictions during voir dire. McLemore argues that to allow the comment of the district attorney would be in direct contravention of Rule 609 of the Mississippi Rules of Evidence. Rule 609 allows the use of prior convictions for the limited purpose of attacking the credibility of the witness. The State contends, and the Court of Appeals agreed, that because McLemore brought in the prior convictions himself, the comment made by the district attorney was properly allowed under this Court's previous holdings of Shell v. State, 554 So.2d 887, 899-900 (Miss. 1989), rev'd in part, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), and Crenshaw v. State, 513 So.2d 898, 900 (Miss. 1987).
The Court of Appeals noted that McLemore had testified as to his convictions on four counts of forgery and that McLemore's attorney had stated on voir dire that McLemore had not been a saint. The Court of *22 Appeals stated that we have found that commenting on prior convictions in closing argument which is taken from the record is proper for a prosecutor, citing Shell, 554 So.2d at 887 and Crenshaw, 513 So.2d at 898.
In Shell we stated that commenting that the defendant was not telling the truth was proper for the prosecuting attorney. The prosecuting attorney was merely pointing out to the jury how the defendant had given several versions of the same story. That case is different from the one here because the prosecuting attorney in Shell was responding to evidence and testimony presented in that case and the attorney did not comment on prior convictions, or how these prior convictions were substantive evidence toward the guilt of the defendant in that case. Thus, this case is not analogous. Id. at 899-900.
Next, the Court of Appeals found that Crenshaw, was dispositive and made McLemore's argument meritless. In Crenshaw the district attorney, during closing argument, quoted the testimony of the appellant taken straight from the record. Again, we can distinguish this case, because the attorney in the case here, was commenting on McLemore's prior convictions and how the prior convictions were also crimes of greed, like the crime McLemore was being tried for, armed robbery, and he was not merely reciting from the record verbatim. Again this case is not dispositive. Id. at 900.
We do not allow prior convictions in under Miss.R.Evid. 609  Impeachment by Evidence of Conviction of Crime  for any other purpose other than attacking the credibility of a witness, including the defendant. Bogard v. State, 624 So.2d 1313, 1316-17 (Miss. 1993) (citing McInnis v. State, 527 So.2d 84, 88 (Miss. 1988)). It does not follow that if the Defendant brought in the evidence of other convictions that the prosecution may then have "free rein" with these convictions. The prosecution cannot use the prior convictions as substantive evidence of the current crime, but rather for the limited purpose of credibility.
McLemore was on trial for one crime only. The closing argument by the prosecuting attorney was to make substantive evidence out of that which was admitted only for maligning McLemore's credibility. Consequently we cannot say that the prosecuting attorney's comment was not prejudicial.
When McLemore testified, evidence of his prior convictions became admissible solely on the issue of his credibility as a witness. If testimony of these crimes had first been extracted by the prosecution, there can be no doubt that the failure to limit the admissibility of McLemore's testimony to the issue of credibility would have been reversible error. However, it is contended that since McLemore first testified as to his prior convictions, the court was not required to limit the jury's consideration of such testimony to the issue of credibility.
Allowing the State to use the evidence of the prior conviction for any other purpose than to go to McLemore's credibility, the jury might have gotten the impression that McLemore had acted similarly on this occasion. Thus, prejudice may flow from the very real possibility that the jury may have concluded that the defendant committed the crime because he had shown a prior criminal tendency. A conviction must be based upon evidence of the offense for which the accused is on trial rather than prior criminal acts.
We have stated before that when evidence of other crimes is admitted for a specific purpose, the judge should instruct the jury to limit their consideration of this evidence for the particular purpose for which it is offered. See Smith v. State, 656 So.2d 95, 100 (Miss. 1995); Peterson v. State, 518 So.2d 632 (Miss. 1987). In fact we have stated "that a limiting instruction must be given in order to minimize the risk that the jury will infer guilt from the previous conduct." Smith, 656 So.2d at 100; Pugh v. State, 584 So.2d 781, 786 (Miss. 1991); Peterson, 518 So.2d at 638. "We clearly indicated that a limiting instruction should have been given sua sponte." Smith, 656 So.2d at 100 (citing Peterson, 518 So.2d at 632). The reasoning behind this rule is to protect against a jury convicting a defendant just because he has committed other crimes and not because the prosecution has proven that he is guilty of the crime for which he is accused. Under the present *23 circumstances, the trial judge gave no limiting instruction. The exception to this rule would be where the evidence of the other crimes is admitted to show motive or intent and that these acts may have been done in furtherance of such motive or intent. However, this is not the case.
In the case at hand, the error not to limit the prosecution to attacking the credibility of McLemore is prejudicial. It is a well-known trial technique for the defense to anticipate the later introduction by the prosecution of previous convictions, and there is nothing to suggest the present voir dire and testimony of McLemore was not introduced for any other reason than to ward off the undesirable effect of not revealing such prejudicial information. The voir dire statement by the defense attorney, related solely to the issue of credibility, but since the State introduced it as substantive evidence of guilt for the current crime, the jurors were free to consider the prior convictions for any purpose, including the probability that McLemore committed the crime because he had criminal tendencies. Because of the prejudicial effect of the prosecution's closing argument, this case should be reversed and remanded.

II.

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN RESTRICTING THE DIRECT EXAMINATION OF JOE MCLEMORE; THE TRIAL COURT IMPROPERLY REFUSED TO ALLOW JOE MCLEMORE, IN HIS DIRECT TESTIMONY, TO PRESENT EVIDENCE OF A BIAS AND PREJUDICE AGAINST HIM ON THE PART OF CERTAIN STATE WITNESSES AND TO PRESENT EVIDENCE OF THE FAULTY INVESTIGATORY PROCEDURES EMPLOYED BY LAW OFFICERS.
McLemore contends that in his direct examination, he sought to present evidence as to the bias and prejudice against him by officers of the Scott County Sheriff's Department, and that the lower court erred in sustaining the State's objection to its introduction. The cases that McLemore relies on, Cantrell v. State, 507 So.2d 325 (Miss. 1987), Sanders v. State, 352 So.2d 822 (Miss. 1977), and Shorter v. State, 257 So.2d 236 (Miss. 1972), do allow a defendant to show that the State's witnesses were biased and prejudiced against him; however, in all these cases the defense tried to show bias during cross-examination of the State's witnesses.
In Cantrell, the defendant sought to show that his estranged wife had prompted his children to testify falsely against him. The lower court gave Cantrell great latitude in cross-examining the children but the lower court did not allow Cantrell to establish the bias of his wife who did not testify at trial. In Cantrell we went on to state that bias, motive, or interest is always material and may be proven by extrinsic evidence. Id. at 330 (citing Miss. Code Ann. § 13-1-13). Miss. Code Ann. § 13-1-13 states in pertinent part: "Any witness may be examined touching his interest in the cause or his conviction of any crime, and his answers may be contradicted, and his interest or his conviction of a crime established by other evidence."
In Sanders, the defense attempted to cross-examine a witness on an alleged incident in which the defendant, a former deputy sheriff, had attempted to arrest the witness on a drug charge. The defense argued that the evidence was relevant to show a motive for testifying against Sanders. We reversed and remanded on this and other errors. In Shorter, the defendant assigned as error the exclusion of Shorter's testimony on trouble between him and the witness Ivy. We found that a part of the testimony proffered was "probably admissible, but it is so intermingled with testimony not admissible, we cannot say that the trial court abused its discretion in excluding it." Shorter, 257 So.2d at 240.
During McLemore's testimony, the prosecution objected to a question by the defense ("Did they also lock on you as being somebody that committed another robbery?") based on the question being a leading question and not relevant.
On proffer defense counsel stated:
All right. If permitted to testify, Joey McLemore would testify under oath that following his arrest on the charges of *24 armed robbery and aggravated assault of Nadine Walker, that Deputies of the Scott County Sheriff's Office confronted Joey McLemore and accused him of committing murder and an armed robbery out at a service station on Highway 21 North in Scott County. Mr. McLemore would testify he was interrogated repeatedly for several hours, that he was hit, threatened, knocked around, and in which interviews, the Deputies said, "We know you robbed both places, the robberies occurred at the same time, we know you did it," and he refused to confess to it and then later on that day or the next day, the officers determined that the robbery and murder that occurred on Highway 21 occurred at a time when Joey McLemore was actually under arrest, in their custody, and they so told him, and we feel like  okay. That would be the proffer.
... .
We feel that the evidence is relevant, because it shows that the Sheriff's Office in their investigation, had a mind set of guilt of this Defendant. That they felt like from the moment they started their investigation, Joey McLemore was guilty. We feel like that he is certainly not guilty, and we feel like that the Sheriff's Office made a very serious error in believing that he was guilty of the second armed robbery and the murder on Highway 21, which reflects on the investigative procedures used by the Sheriff's Office. I think the jury could find, "Well, they say he robbed and stabbed Nadine Walker, but they also [say he] murdered and robbed a man out on Highway 21. If they were wrong in one instance, they could very well be wrong in another instance." We feel like it is relevant.
The court sustained the objection. Besides sustaining the objection based on relevancy, the court also noted that the testimony would cause speculation concerning the other crime and that there would also be the real possibility that the testimony regarding the other crime would confuse and divert the jury from the real issues of the case.
The State argues that McLemore did not preserve the issue for appeal since he did not raise the error in the motion for a new trial, citing Billiot v. State, 454 So.2d 445 (Miss. 1984), and that McLemore did not assign the issue in the post-trial motions, and that there was no objection. The State's argument must fail. In Jackson v. State, 423 So.2d 129 (Miss. 1982), we said that "[m]any attorneys in both criminal and civil cases are unfamiliar with the requirement as to what matters assigned as error must be included in a motion for a new trial." Id. at 131. That in order "to take advantage of the alleged error on appeal to this Court, it may be helpful for us to point out that is it not necessary to make a motion for a new trial grounded upon errors shown in the official transcript... ." Id. (quoting Colson v. Sims, 220 So.2d 345, 346 n. 1 (Miss. 1969)). In Jackson we enunciated that there are certain errors that parties must bring to the attention of the trial judge in a motion for a new trial. These include, all new matters, motions made upon the ground of inadequate or excessive damages, motions made for new trial where it is contended that the verdict is against the overwhelming weight of the evidence, and the denial of a continuance. McLemore did not argue any of these instances in his motion for a new trial. In the case at hand, McLemore objected and even made a proffer, clearly setting out the purposes for the alleged error. "Having made an objection at trial, the objection was preserved for appellate purposes despite its failure to appear in the appellant's motion for a new trial." Donald v. State, 472 So.2d 370, 373 (Miss. 1985) (citing Jackson, 423 So.2d at 131; Colson, 220 So.2d at 346)). "The rationale for this rule is based on the policy of giving the trial judge, prior to appellate review, the opportunity to consider the alleged error." Ross v. State, 603 So.2d 857, 861 (Miss. 1992) (citing Howard v. State, 507 So.2d 58, 63 (Miss. 1987); Cooper v. Lawson, 264 So.2d 890, 891 (Miss. 1972)). Since, McLemore properly preserved the alleged error, the State's argument, that we procedurally bar this issue, is without merit.
McLemore did not try to elicit a showing of prejudice during the cross-examination of the officers in question. In its opinion the *25 Court of Appeals held, in pertinent part as follows:
McLemore also claims that a witness may be examined as to his feelings about a case, his interests, bias, motives, or hostilities and cites Sanders v. State, 352 So.2d 822 (Miss. 1977) as authority. However, Sanders does not hold that the defendant must be allowed to testify about his personal feelings of bias. Sanders says that the witness may be cross-examined to show bias... .
A reading of the Sanders case does not show that a party can show bias, motive, or hostility only on cross-examination. Although it may be a better practice, it does not stand to reason that during cross-examination is the only time a party can show these motives. McLemore contends that evidence of bias, motive, or interest is always relevant and it should not matter when parties introduce this evidence, in direct examination of the defendant or during cross-examination of the witness. McLemore is correct in that these instances are always material and he was entitled to present evidence as to the bias and prejudice against him by the State's witnesses. Thus, the lower court erred when it sustained the State's objection based on relevancy.

III.

THE TRIAL COURT COMMITTED ERROR IN EFFECTIVELY DENYING DEFENDANT HIS STATUTORY RIGHT TO EFFECTIVELY VOIR DIRE THE JURY PANEL.
McLemore's last argument is that the lower court committed error in not allowing him to effectively voir dire the jury panel. McLemore argues that during voir dire the jury panel was scattered throughout the courtroom, interspersed with the spectators, and that he was unable to distinguish between those individuals who were jurors and spectators. The Court of Appeals held that the trial judge did not commit error because according to Peters v. State, 314 So.2d 724 (Miss. 1975), a jury selection procedure which gives the defendant "a fair opportunity to ask questions of individual jurors which may enable the defendant to determine his right to challenge that juror" is proper. Peters, 314 So.2d at 728. The State argues that McLemore did not preserve this issue for appeal because McLemore failed to include this issue in the motion for a new trial, citing Jackson v. State, 423 So.2d 129, 131 (Miss. 1982). Again, the State's argument must fail because this issue is not procedurally barred, see Issue II.
Prior to voir dire the following exchange occurred:
BY MR. DONALD: Judge, before we voir dire, are we going to place the jurors? I don't think I can study their expressions or know anything about them.
BY THE COURT: I don't know what else to do. I don't have the facilities for it.
BY MR. DONALD: Judge, there's enough seats if you will just move them around.
BY THE COURT: Where am I going to move them to, Pat?
BY MR. DONALD: The people in the front row can move over. I can't study the jurors and them scattered all over the courtroom. I don't think I can properly voir-dire this jury for this Defendant with them scattered.
BY THE COURT: You can do it.
BY MR. DONALD: I don't doubt that, but I'm telling the Court I can't.
BY THE COURT: I don't have any facilities for them, and I am not going to move them around. We know where they are. You will be standing there within twenty feet of the furtherest one. You will be standing up there in front of the rail.
BY MR. DONALD: I would ask the Court to find on the record that the courtroom is packed with people.
BY THE COURT: I will make a record, but I am not going to move the jurors around. We will do that at the proper time.
At the conclusion of voir dire McLemore's counsel moved the court to quash the jury panel stating the following:
BY MR. DONALD: Judge, for the record, I would move to quash this jury panel and select another entire jury panel for the *26 reason the Defendant did not feel like he was able to properly and adequately voir dire the jury, because the jurors were scattered throughout the entire courtroom. The courtroom was full of people, and at least fifteen or twenty people standing up, and that made it impossible for the Defendant to effectively voir dire the jury. One of the main reasons for voir dire examination, especially in light of peremptory challenges, is being able to look at the jurors and study the jurors, and the Defendant's counsel could not do that, because the jurors were scattered throughout the courtroom, and I move the Court to quash the panel.
BY THE COURT: Let the record show that I practiced law in these four counties of this district for all of my professional career, and the most comfortable courtroom to try a case in, including the selection of a jury, is Newton County. The lawyers who are voir-diring the jury are nearer in proximity to the jurors than any other courtroom of this district, including Scott County, which Mr. Donald practices law in. When the attorneys are standing at the rail, as they were in this case, directly in front of and no more than six feet away, were the panels of 3, 4, and 5, who were prospective jurors in this case, and immediately behind them were the special veniremen, which from the attorney inside the rail, where Mr. Donald was, and the last juror on the back row, could have been no more than twenty feet. Then to his immediate right and on the first three rows, were the other special veniremen. Certainly, I see no hardship in this case, and I see no denial of the rights of this Defendant by reason of the facilities or lack of facilities that we have in this courtroom, so your motion is overruled.
In support McLemore argues Miss. Code Ann. § 13-5-69 which states:
Except in the cases in which the examination of jurors is governed by rules promulgated by the Mississippi Supreme Court, the parties or their attorneys in all jury trials shall have the right to question jurors who are being impaneled with reference to challenges for cause, and for peremptory challenges, and it shall not be necessary to propound the questions through the presiding judge, but they may be asked by the attorneys or by litigants not represented by attorneys.
The one case cited by McLemore as support, Jones v. State, 133 Miss. 684, 98 So. 150 (1923), involved an early case where the trial judge held unconstitutional an earlier version of the statute which allowed the attorneys to ask jurors questions directly rather than through the trial judge. We upheld the constitutionality of the statute. That case however does not support McLemore's argument that he is entitled to a particular courtroom design or facilities.
The record shows that defense counsel asked questions to the panel and was able to ask questions of individuals who responded to his questions. He questioned Floyd F. McGee, who indicated that he knew facts about the case, and David R. Johnson and Marcus McDonald, who indicated that they had been or were involved in law enforcement. Defense counsel exercised five peremptory challenges during the jury selection process and the State excused three potential jurors.
The Court of Appeals cited Peters v. State, 314 So.2d 724 (Miss. 1975), in finding that McLemore's claim was without merit. In Peters there were several issues raised on the method of selection of jurors, in particular whether the State was required to pick the jury in open court or whether the selection process could be held in an anteroom. In that case we stated: "The method of selecting a jury is ordinarily within the sound judicial discretion of the trial judge, except in those circumstances where the jury selection method is set forth by statute." Id. at 726.
In this case, the judge made a factual finding that the physical layout complained of by defense counsel did not deny McLemore any rights and found the facilities and the proximity of the lawyers to the prospective jurors to be better than any in the four-county district. Ordinarily, we give a finding of fact by a trial judge deference unless shown to be clearly erroneous. Woodward v. State, 533 So.2d 418, 426 (Miss. 1988). What worries us in this particular instance is *27 how Judge Gordon failed to even try to accommodate the defense attorney. The trial court should make every effort to accommodate counsel and litigants consistent with the best interests of all concerned, and indulge the attorneys in their efforts to discharge their professional obligation to their clients. What was gained by Judge Gordon by not moving the jury panel to one side of the courtroom? Or why not ask the spectators to step out of the courtroom while voir dire took place? Although it was shown that the defense attorney was able to effectively voir dire the prospective jurors, we feel that trial judges have an affirmative obligation to respect the attorneys when such an important procedure is taking place. It is up to the court to insure that the defendant in fact received an effective voir dire. Since McLemore did not show this Court that the lower court's ruling was clearly erroneous, we will not reverse on this issue.

CONCLUSION
Because the prosecuting attorney used McLemore's prior convictions as substantive evidence of his guilt for the crime for which he was on trial, there is the very real possibility that the jury may have concluded that the defendant committed the crime because he had displayed a prior criminal tendency. A conviction must be based upon evidence of the offense for which the accused is on trial rather than prior criminal acts. This is reversible error.
Because the lower court did not allow McLemore to testify about the alleged bias, prejudice, or interest of the police officers during direct examination, and such information is always relevant, whether presented during direct or cross-examination, the second issue raised in this appeal is also reversible.
The third issue is not reversible, because McLemore failed to present sufficient evidence to show that the lower court denied him the right to effectively voir dire the jury panel.
The judgment is accordingly reversed and the cause remanded to the lower court for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
PRATHER, P.J., PITTMAN, BANKS and McRAE, JJ., concur.
JAMES L. ROBERTS, Jr., J., concurs as to issue III.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, C.J., and James L. ROBERTS, Jr., and MILLS, JJ.
SMITH, Justice, concurring in part and dissenting in part:
I agree with the majority's affirmance of Issue III. It is the majority's reversal on Issues I and II with which I must disagree. The opinion of the Court of Appeals should be affirmed.
The prosecutor in closing argument was simply quoting what the defense attorney had already stated in the record: that "he [McLemore] has not been a saint. He has been convicted four times of uttering forgery, but that was just a crime of greed." Defense counsel cracked open this door slightly during voir dire and threw it wide open by using the prior convictions of his client as substantive evidence of the bad character of McLemore during McLemore's direct testimony. Defense counsel's reference to McLemore's greed, inferred that McLemore acted in conformity with his past bad character. McLemore denied committing previous crimes of violence. The obvious trial strategy by the defense was to have the jury believe McLemore was simply one who only committed crimes of greed, but was not violent. Surely the State would be allowed to rebut this testimony. How can McLemore now complain concerning evidence he introduced himself during voir dire and the actual trial. He cannot. Fleming v. State, 604 So.2d 280, 289 (Miss. 1992). In Crenshaw v. State, 520 So.2d 131, 133 (Miss. 1988), this Court stated that "evidence even if otherwise inadmissible, can be properly presented where the defendant has `opened the door.'"
Error, if any, was harmless beyond a reasonable doubt as it was clearly invited by McLemore's counsel. See Griffin v. State, *28 504 So.2d 186, 192 (Miss. 1987) (holding generally for the proposition that when an attorney invites error, he cannot complain). The majority makes much ado that no limiting instruction was given in this case. However, it should be noted that although McLemore's attorney objected, he failed to request a limiting instruction. I see no merit to Issue I and would affirm the Court of Appeals.
Next, McLemore, citing Sanders v. State, 352 So.2d 822 (Miss. 1977), alleged bias and prejudice against him by officers of the Scott County Sheriff's Department. However, McLemore failed to cross-examine any of the officers during their testimony as to any bias or prejudice which the officers might have had against McLemore. Instead of cross-examining the officers, McLemore chose to offer a proffer in which he claimed officers accused him of another crime, threatened and knocked him around, but he refused to confess. Later that day, or on the next day, the officers discovered that McLemore did not commit the other crime and told him so.
The majority, writes that the Court of Appeals incorrectly reasoned from Sanders that bias, motive or prejudice could only be shown by cross-examination of a witness. In the case sub judice the proffer is limited to exactly what the Court of Appeals' opinion highlighted: that McLemore was complaining of extensive questioning by arresting officers, accusations of another crime, and coercion, and yet there was no confession by McLemore. In fact, it would be inconceivable that if officers suspected McLemore of committing another crime that they would not have questioned him about it.
The proffer did not allege that McLemore believed there existed bias, motive or prejudice by the officers; it simply reflects that the officers suspected McLemore of committing another crime and when they discovered he could not have committed it, McLemore was so advised. Defense counsel stated at the proffer's ending, "they so told him, and we feel like  okay. That would be the proffer." The proffer comes to an abrupt end at that point, but defense counsel appears to be searching, although unsuccessfully, for further information to relate to the trial court. Defense counsel may have intended to say more and state McLemore's personal opinion of bias, motive or prejudice by the officers, but he certainly did not. The trial court and the Court of Appeals correctly held that since McLemore did not confess, no review of that complaint was necessary.
Sanders leaves no doubt that "[i]t is clear that the credibility of a witness may be impeached on cross-examination by showing bias, prejudice, motive or hostility." Id. at 824, Citing Tate v. State, 317 So.2d 23 (Miss. 1975); Palmer v. Clarksdale Hospital, 213 Miss. 601, 57 So.2d 473 (1952). The Sanders Court further stated that "[w]ide latitude is to be allowed on cross-examination to show bias or motive for the purpose of affecting credibility." Id. at 824; Cody v. State, 167 Miss. 150, 148 So. 627 (1933). No evidence of any bias, motive or prejudice by law enforcement officers was presented to the jury.
All three cases cited by McLemore in support of his argument concern cross-examination of witnesses to show bias, motive or prejudice. Certainly McLemore is entitled to show bias or prejudice. However, neither McLemore nor the majority cite any case which holds that a defendant must be allowed to testify on direct examination about his own personal feelings of bias, motive or prejudice of others towards him. Even in Cantrell v. State, 507 So.2d 325, 330 (Miss. 1987), the wife did not testify and thus was not subject to cross-examination and the trial court would not allow testimony of bias and prejudice by other witnesses on cross-examination. The Cantrell court further held that any evidence of bias or prejudice by the wife was too remote in time to be admissible anyway. Id. at 330.
I find no merit to McLemore's arguments on Issues I and II. The trial court did not abuse its discretion and the Court of Appeals' opinion was correct. McLemore's conviction and sentence should be affirmed.
I respectfully concur in part and dissent in part.
DAN M. LEE, C.J., and JAMES L. ROBERTS, Jr. and MILLS, JJ., join this opinion.