# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-01931-SCT

*CLIFTON T. TORREY, SR.*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 2/26/2003 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | FRANKLIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GUS GRABLE SERMOS |
| | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/18/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.     Clifton T. Torrey, Sr., was indicted by the Franklin County Grand Jury during its 2002 term on 3 counts of sexual battery of a child under eighteen years of age, in violation of Miss. Code Ann. §  97-3-95 (2), committed against Torrey's stepchildren, his older stepdaughter who was born on June 27, 1987; his stepson who was born on August 3, 1988; and his younger stepdaughter who was born on September 24, 1990.

¶2.     Following a jury trial in the Circuit Court of Franklin County, the jury found Torrey guilty on all 3 counts.   After the jury returned its verdict, the State presented evidence that Torrey was a habitual offender.   After adjudicating Torrey to be a habitual offender pursuant to Miss. Code Ann. § 99-19-81 (Rev. 2000), the trial court sentenced Torrey as a habitual offender to serve 30 years on each count to be served consecutively, as a habitual offender, without benefit of reduction, suspension, parole or probation.

¶3.     Torrey's attorney filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial which the trial court denied.  Torrey now appeals to this Court.

**FACTS**

¶4.     Torrey was charged in Count I of the indictment with committing sexual battery in and upon his older stepdaughter in May and/or June 2002.   Count II charged Torrey with committing sexual battery in and upon his stepson, in 2002 and/or 2001.   Count III charged Torrey with committing sexual battery in and upon his younger stepdaughter, in June and/or July 2002.   As two of the issues raised on appeal address the legal sufficiency and the weight and credibility of the witnesses's testimony at trial, we will address the testimony of each of the witness.

¶5.     On July 6, 2002, the 3 stepchildren ran away from home due to the events of sexual battery.   The girls ran to Rhonda Fauver's house.  She transported them to the house of Craig Fraiser.   Fraiser knew the children from driving them to church for the past couple of years. They told Fraiser about the abuse, and he called the "law."   The children were visibly upset and crying.  The boy had stayed behind.  When Fraiser did speak with the boy, he was very upset and crying.  He told Fraiser about what Torrey had done to them.

¶6.     A Franklin County Deputy Sheriff, Officer Blackwell, came out to Fraiser's house.  The girls told the deputy what happened, and the deputy went and picked the boy up and brought him back to Fraiser's house.  The Department of Human Services was notified.  Jim O'Brien, a social worker at the Franklin County DHS, was called to speak with the children.

¶7.     O'Brien spoke with the children and took the children into DHS custody. O'Brien arranged for the children to be interviewed at the Children's Advocacy Center in McComb. O'Brien monitored the interviews conducted of the children from another location.  The children were interviewed separately.  O'Brian testified that what the children told the interviewer was consistent with what the children has previously told him.  The girls were examined by Dr. Harriet Hampton, a forensic gynecologist at the University Medical Center. Appropriate foster care was arranged, and the children evaluated by a psychologist and provided counseling.

¶8.     The boy testified at trial that in 2000 and 2001, at least twice a week, Torrey forced him to put his mouth on Torrey's penis.  He stated that, "[h]e would put his hand on the back of my neck and force my mouth onto his penis."  The boy testified that the events occurred in his house where he lived with Torrey in Smithdale, Franklin County.

¶9.     The younger girl testified as to events that led up to her and her sister's running away on July 6, 2002.  In her testimony, she stated that she and her sister ran away because their stepfather was sexually abusing them.  They ran to his ex-wife's house and called their deacon, Fraiser, for help.  According to the girl's testimony, their stepfather made her take off her clothes and got on top of her.  He forced his penis into her mouth and vagina.

¶10.    The older girl testified that her stepfather had sexually abused her by forcing his penis into her mouth and vagina.  She stated that her "stepdad had raped [her] several times in the past 5 years."  She testified that she and her sister ran away because she "was tired of it."

¶11.    Torrey testified that he had been living in the house with his stepchildren since November 2001.  He was unemployed, drawing unemployment benefits.  He had been married to his wife for several years, but he previously lived and worked out-of-state.  Torrey, his wife and three stepchildren, and his wife's mother lived in the house.  Torrey testified that the children resented him making them do chores.  He testified that he spanked the children, but did not abuse them.  He stated he did not spank them often because he was abused as a child.  He testified that his stepson could be defiant and was diagnosed with direct defiant disorder.  He testified that he also did not get along with his mother-in-law.  Torrey denied having oral sex with his stepson and sex with his two stepdaughters.

¶12.    Torrey now appeals to this Court.  Torrey's counsel raises the following issue:

   **I.      Whether the legal sufficiency of the evidence supported the verdict.**

¶13.    Besides the issue raised by Torrey's counsel to the legal sufficiency of the evidence, Torrey's pro se brief also raises the following issues:

   **II.     Whether the weight and credibility of the evidence supported the verdict.**

   **III.    Whether the trial court erred in conducting voir dire.**

   **IV.     Whether Torrey received effective assistance of counsel.**

   **V.      Whether the trial court erred in conducting a bifurcated hearing to determine Torrey's status as a habitual offender.**

4

**VI. Whether the trial court erred in sentencing Torrey under an enhanced punishment as a habitual offender.**

**DISCUSSION**

**I. & II. Legal sufficiency of the evidence and weight and credibility of the evidence.**

¶14. Torrey argues that the evidence was not legally sufficient to convict him on 3 counts of sexual battery or to prove that a sexual battery was committed under Miss. Code Ann. § 97-3-95(2). Torrey states that he testified that he did not sexually abuse or sexually penetrate his stepchildren. Torrey contends that "(a)ll the State offered the jury were unsupported accusations by each of the three children that their step-father had sexually abused them off and on over the past two years." In effect, Torrey's argument is that the children's testimony was uncorroborated so therefore the evidence is legally insufficient to support the jury's verdict and that the trial court erred in denying his motion for judgment notwithstanding the verdict, or in the alternative a new trial.

¶15. In Torrey's pro se brief, he also argues that for the same reasons stated above, the weight and credibility of the evidence does not support the jury's verdict. As to legal sufficiency, this Court held in *Pinkney v. State*, 538 So.2d 329, 353 (Miss. 1988), that reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair minded jurors could only find the accused not guilty." *Weeks v. State*, 804 So.2d. 980, 997 (Miss. 2001).

¶16. As to the weight of the evidence, this Court held in *McFee v. State*, 511 So.2d 130, 133 (Miss. 1987), that it has limited authority to interfere with a jury verdict. *Weeks*, 804 So.2d

5

at 997. We look at all the evidence in the light that is most consistent to the jury verdict. *Id*.

When reviewing the weight of the evidence, the prosecution is given "the benefit of all

favorable inferences that may reasonably be drawn from the evidence." *Id*. (quoting *McFee*,

511 So.2d at 133). We held that:

> [I]f there is in the record substantial evidence of such quality and weight that,
> having in mind the beyond a reasonable doubt burden of proof standard,
> reasonable and fair-minded jurors in the exercise of impartial judgement might
> have reached different conclusions, the verdict of guilty is thus placed beyond
> our authority to disturb.

*Weeks*, 804 So.2d at 997-98 (quoting *McFee*, 511 So.2d at 133-34).

¶17. The facts of each witness's testimony will not be restated in addressing these issues.

The children's testimony was clear and consistent with the 3 counts of sexual battery charged

against Torrey. The only evidence presented to contradict the testimony of the 3 children was

the testimony of the defendant, Torrey, for which he presented a general denial of the

accusations.

¶18. In *Collier v. State*, 711 So.2d 458, 462 (Miss. 1998), we stated:

> [O]ur case law clearly holds that the unsupported word of the victim of a sex
> crime is sufficient to support a guilty verdict where that testimony is not
> discredited or contradicted by other credible evidence, especially if the conduct
> of the victim is consistent with the conduct of one who has been victimized by
> a sex crime.

*See also Byars v. State*, 835 So.2d 965, 970 (Miss. Ct. App. 2003).

¶19. At trial, the 3 children presented a detailed and graphic account of the sexual battery.

Furthermore, the testimony from Fraiser and O'Brien was consistent with the account of events

provided by the children.

6

¶20. The jury is the sole judge of the credibility of witnesses. Based on all the evidence presented at trial, the jury found Torrey guilty on all three counts of sexual battery. The evidence was legally sufficient, and the verdict was not contrary to the weight of the evidence. Torrey's assignments of error are without merit.

### III. Voir Dire

¶21. Torrey in his pro se brief argues that the trial court erred to give him a proper voir dire because a juror who was the wife of a deputy sheriff was in the jury pool. The record does not reflect any error.

¶22. Torrey's counsel challenged the juror for cause based on her being the wife of a deputy sheriff. The trial court stated, that as to that juror, she is the wife of a deputy sheriff in this case, and the [c]ourt clearly grants that challenge for cause."

¶23. This Court has held that voir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Ballenger v. State*, 667 So.2d 1242, 1250 (Miss. 1995) (citing *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L. Ed. 2d 492 (1992), citing *Ristaino v. Ross*, 424 U.S. 589, 594, 96 S.Ct. 1017, 1020 (1976)) (quoting *Connors v. United States*, 158 U.S. 408, 413, 15 S.Ct. 951, 953, 47 L. Ed. 2d 258 (1975)). *See also Foster v. State*, 639 So.2d 1263, 1274 (Miss. 1994).

¶24. "A jury selection procedure which gives the defendant 'a fair opportunity to ask questions of individual jurors which may enable the defendant to determine his right to challenge that juror' is proper." *McLemore v. State*, 669 So.2d 19, 25 (Miss. 1996) (quoting *Peters v. State*, 314 So.2d 724, 728 (Miss. 1975)).

7

¶25. "The trial court has broad discretion in passing upon the extent and propriety of questions addressed to prospective jurors." *Stevens v. State*, 806 So.2d 1031, 1062 (Miss. 2001). *See also* *McGilberry v. State*, 741 So.2d 894, 912 (Miss. 1999); *Davis v. State*, 684 So.2d 643, 651-52 (Miss. 1996); *Jones v. State*, 381 So.2d 983, 990 (Miss. 1980).

¶26. We find that the record does not support Torrey's contention that the trial court erred. Furthermore, the prospective juror did not serve on the jury that was seated. In fact, the trial court immediately struck that juror based on his counsel's challenge for cause. Torrey presents no evidence of any harm or prejudice which resulted. *See Stevens*, 806 So.2d at 1054. We fail to see what more the trial court or Torrey's counsel could have done. This issue is without merit.

### IV. Effective Assistance of Counsel

¶27. Torrey alleges in his pro se brief that his trial counsel offered ineffective assistance of counsel for several alleged deficiencies without any evidence to support the allegations or prove a claim of prejudice. The record does not support this assignment of error.

¶28. "Accusations of ineffective assistance of counsel are subject to the requirements set forth under *Osborn v. State*, 695 So.2d 570, 575 (Miss. 1997), and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under both cases, this Court will not find counsel's assistance ineffective unless the accused (1) cites specific instances in which the attorney was so deficient that he essentially was not acting as counsel, and (2) shows that those errors deprived the accused of a fair trial. *Id*." *Washington v. State*, 800 So.2d 1140, 1145 (Miss. 2001).

8

¶29. In *Burns v. State*, 813 So.2d 668, 673 (Miss. 2001), this Court restated the standard to be followed in reviewing a claim of ineffective assistance of counsel, stating:

> The standard for determining if a defendant received effective assistance of counsel is well settled. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. *Id*. at 687, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v.* State, 454 So.2d 468, 477 (Miss. 1984) (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id*.

¶30. Torrey provides a list of alleged deficiencies which include:

(1)     failing to investigate any possible defense witnesses;
(2)     failing to cross-examine the State's witnesses;
(3)     failing to obtain George's sealed records of his past history with DHS or his past juvenile records;
(4)     failing to request George's school records.

¶31. The record reflects that Torrey testified in his own defense to deny the accusations made by his 3 stepchildren. Torrey's brief does not list or contain any possible defense witnesses that his trial counsel should have called to testify or how that prejudiced his case. Torrey only stated that no subpoenas were issued for his defense. Torrey's counsel cross-examined Frasier and the stepson. However, the record reflects that after conferring with the prosecuting attorney, the younger stepdaughter and O'Brien were not cross-examined. After conferring with his client, Torrey's counsel did not cross-examine the older stepdaughter.

¶32. Torrey has failed to show that the defense counsel's decision to forgo cross-examination of some witnesses was not sound trial strategy or that it prejudiced his case. In fact, Torrey's brief states that his attorney advised him that it "would only make things worse."

¶33. Torrey fails to demonstrate that he was prejudiced in his defense of the case as required under the second prong of *Strickland*. It is the duty of the appellant to not only demonstrate error, but also, to show the prejudice to the defense. *See King v. State*, 857 So.2d 702, 719 (Miss. 2003). *See also McGowan v. State*, 706 So.2d 231, 243 (Miss. 1997). This Court has held:

> To determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991).... There is no constitutional right then to errorless counsel. *Cabello v. State*, 524 So.2d 313, 315 (Miss. 1988).... If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end. *Neal v. State*, 525 So.2d 1279, 1281 (Miss. 1987).

*Davis v. State*, 743 So.2d 326, 334 (Miss. 1999).

¶34. The alleged errors committed by Torrey's trial counsel are insufficient to satisfy the elements of an ineffective assistance of counsel claim. Mississippi law creates a strong, but rebuttable presumption "that trial counsel's conduct is within a wide range of reasonable conduct and that decisions made by trial counsel are strategic." *Vielee v. State*, 653 So.2d 920, 922 (Miss. 1995). We find that Torrey has not effectively shown any deficiency in his representation or any resulting prejudice. This issue is without merit.

### V. & VI.      Habitual offender hearing and habitual offender status

¶35. Torrey argues in his pro se brief that the trial court erred in holding a bifurcated hearing to amend his indictment based on his status as a habitual offender even though that status was

10

not cited in the original indictment. Torrey also argues that he should not have received the enhanced sentence as a habitual offender.

¶36. After the jury returned its verdict, Torrey was sentenced pursuant to Miss. Code Ann. § 99-19-81 as a habitual offender after being adjudicated as a habitual offender by the trial court. The trial court conducted a bifurcated hearing and amended the indictment to reflect that Torrey was a habitual offender pursuant to Miss. Code Ann. § 99-19-81.

¶37. The trial court subsequently sentenced Torrey to 30 years on each of the 3 counts to be served consecutively, as a habitual offender, without benefit of reduction, suspension, parole or probation.

¶38. On appeal, Torrey does not offer any evidence to show surprise from the State's attempt to charge him as a habitual offender, and Torrey has failed to show how his defense was adversely affected by the amendment to the indictment. In fact, Torrey does not argue these issues beyond merely stating them in his statement of issues in his pro se brief.

¶39. At trial, Torrey did not contest or dispute the prior felony sentences introduced by the State at the hearing to amend the indictment to habitual. We find that the amendment was

proper. *Adams v. State*, 772 So.2d 1010, 1019-21 (Miss. 2000); URCCC 7.09.[1] This assignment of error is without merit.

## CONCLUSION

¶40.    For these reasons, we affirm the judgment of the Circuit Court of Franklin County.

¶41.    **CONVICTION OF THREE (3) COUNTS OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS FOR EACH COUNT OR A TOTAL OF NINETY (90) YEARS AS A HABITUAL OFFENDER, WITHOUT BENEFIT OF REDUCTION, SUSPENSION, PAROLE OR PROBATION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DICKINSON AND RANDOLPH, JJ., CONCUR. CARLSON, J., CONCURS IN RESULT ONLY. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

---

[1]  URCCC 7.09 states:

*All indictments may be amended as to form but not as to the substance of the offense charged.  Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses* and the amendment is to assert prior offenses justifying such enhancement.  (e.g., driving under the influence, Miss. Code Ann. § 63-11-30).  Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

(emphasis added).