# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01510-SCT

*CARROLL GRAVES AND CATHY GRAVES*

*v.*

*DUDLEY MAPLES, L.P., AND HANCOCK BANK,*
*TRUSTEE, FOR THE A. F. DANTZLER, JR.,*
*TRUST*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/2004 |
| TRIAL JUDGE: | HON. SANFORD R. STECKLER |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JAMES H. HERRING |
| ATTORNEYS FOR APPELLEES: | MARK ANTHONY MAPLES |
| | W. LEE WATT |
| | JOSEPH ANTHONY SHERMAN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/08/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DIAZ AND CARLSON, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     This case concerns whether a prescriptive easement exists over a piece of property.

**Facts and Course of Proceedings Below**

¶2.     The facts giving rise to this case are not in dispute.[1]  Dudley Maples, L.P. is a corporation that owns property in George County, Mississippi.  Sard-Mag Road is the only way one can reach the land-locked property.  Roughly every three months, Dudley Maples or another designee of Dudley Maples, L.P., takes that road to visit his property.  Maples inspects the timber growing on the property for growth patterns, fire prevention, and insect infestation, and performs other tasks necessary to property management.  In addition to selling timber from the property, Maples also draws income by leasing the land to hunters.  The hunters also use Sard-Mag Road to access the property.  According to Maples, the road has been in use by individuals who owned property along its borders for nearly a century.

¶3.     Maples was concerned about an attack on the timber by the blackheaded pine sawfly, an insect which consumes the foliage of pine trees.  Defoliation can cause a considerable reduction in the ability of the tree to grow, and may also subject it to attack from other pests, such as bark beetles.  This loss of growth can cause a loss of value and delay the harvest.  Maples had been advised by the Mississippi State Extension Service to inspect the trees regularly.

---

[1]Neither party provided a concise summation of the facts in this case, only reciting at great length the course of proceedings in the trial court and events at trial.  This is contrary to our Rules of Appellate Procedure and is disfavored. *See* M.R.A.P. 28(a)(4) (parties should provide a "statement of facts relevant to the issues presented for review, with appropriate references to the record").

¶4. On March 29, 2002, Carroll Graves purchased property surrounding Sard-Mag Road. This land is situated between the main road, Highway 26, and Maples' property. Not long after his purchase, Graves blocked the road with a pile of debris.

¶5. Maples filed a complaint on October 24, 2002, for a temporary restraining order, a preliminary injunction, and a permanent injunction barring Graves from blocking the road. His other goal was to persuade the trial court to formally declare that a prescriptive easement was established for the portion of Sard-Mag Road that runs across Graves' property. On November 13, 2002, the George County Chancery Court granted a TRO compelling Graves to reopen access to Sard-Mag Road to Maples "and his designees until the final order of this court is entered and the issues are fully resolved by the hearing."

¶6. After receiving the TRO from the trial court, Maples sent a copy of the order and a letter to Graves, notifying him that Maples or a designated list of agents would resume using the Sard-Mag Road to inspect his property. After receiving no response, Maples sent Graves another letter and copy of the TRO. Maples then sent agents across to reach his land, but they were thwarted by Graves and his wife, who were accompanied by a George County constable. Despite the presence of a court order allowing them to use the road to reach the landlocked property, the designees of Maples were threatened with arrest by the constable if they continued down the road. Afterwards, Maples learned that Graves had erected a barbed wire fence across the road.

¶7. Maples then moved for sanctions and attorneys' fees because of Graves' flagrant violation of the order of the chancery court. At the direction of the trial court, other property

3

owners affected by the blocked road were notified.  The A.F. Dantzler, Jr. Trust intervened through its representative Hancock Bank.  The Dantzler Trust owns property directly east, west, and south of the Graves' property, all of which was made inaccessible by Graves' actions.

¶8.    To avoid sanctions for his blatant disregard of the order, Graves entered into a consent order with Maples and Dantzler.  The order noted that Graves was ordered, and agreed, to remove the debris pile and fence blocking Sard-Mag Road, and would reestablish the road. He agreed "not to interfere in any respect whatsoever with Plaintiffs' use of their properties." The order allowed any "employees, agents and assigns" of Maples and Dantzler to use the road.  Finally, Graves agreed that "should he not comply with this order," that Maples and the Dantzler could be granted attorneys' fees and costs for any effort made to ensure compliance with the consent order.  The agreement was signed by attorneys for all three parties on January 3, 2003.

¶9.    However, even after he agreed to abide by the order, Graves refused to honor its terms.  He opened gaps in the barbed wire fences, but only on the northern and western sides. The eastern and southern sides remained fenced, which still blocked  Maples and Dantzler from inspecting their property.[2]  Graves also followed designees of Maples and Dantzler on his four-wheeler, and on one occasion threatened a designee traveling on the road not to return to the property.  At roughly the same time, Dantzler discovered that boat ramps had

_____

[2]Once reaching Graves' property, Sard-Mag Road branches off into three directions.

4

been cut into portions of its property that bordered Black Creek, and suspected Graves played a role in the destruction of the creek banks. Graves later admitted at trial that he had indeed cut the creek banks.

¶10. Maples and Dantzler then petitioned the trial court for a mandatory injunction forcing Graves to comply with the terms of the agreed order, a citation of contempt for failure to comply, and attorneys' fees for having to bring further legal action. Yet another order was entered by the trial court, again signed by attorneys for all parties, affirming all the terms of the previous order and mandating a repair of the creek banks. The only question reserved was the request for attorneys' fees, which was to be determined at trial.

¶11. The trial was held over five days in late 2003. Because Graves admitted at trial that he knew Maples and Dantzler had a right to use the road, the trial court found that the need for "litigation and the numerous orders and methods of procedure taken throughout [this case] were, in fact, frivolous in nature." Graves repeatedly admitted that he knew the road was open to all and that he had personally piled the debris, built the barbed wire fence, and cut the creek banks on Black Creek.

¶12. The trial court ultimately found that a prescriptive easement existed over Graves' property due to its use as an access road to Black Creek and as a logging road since the 1930's. Use of the road was allowed in favor of Maples, Dantzler, and their designees, invitees, and assigns.[3] Graves was permanently enjoined from interfering with the use of the

_____

[3]Although Graves repeatedly objects in his briefs to Sard-Mag Road being declared open to the public, no such order was issued by the trial court. Indeed, the chancery court

road by those persons. Graves was ordered to repair the creek banks he damaged and to pay $3,200 to Dantzler and $2,500 to Maples to pay their attorneys' fees incurred in bringing the action.

¶13. Graves did not petition the court for reconsideration of this judgment or a new trial, but instead appealed directly to this Court. He argues three separate errors were committed by the trial court.

## Standard of Review

¶14. On review, we generally defer to a chancery court's findings of fact unless they are manifestly wrong or clearly erroneous. *Saliba v. Saliba*, 753 So. 2d 1095, 1098 (Miss. 2000). We use a de novo standard of review when examining questions of law decided by a chancery court. *Id.*

### I. Was the trial court's finding of a prescriptive easement against the weight of the evidence?

¶15. Graves argues that the finding of a prescriptive easement across their land was against the weight of the evidence. In response, Maples offers that this issue was never raised in a motion to reconsider at the chancery court. We have "repeatedly held that a trial judge will not be found in error on a matter not presented to the trial court for a decision." *Purvis v.*

---

explicitly noted that "the Court will refrain from declaring the road a public road" and narrowed those who might use it to Maples, Dantzler, and their designees. The trial court did note that members of the general public could possibly use the road "to the extent that the Plaintiffs have shown the general public to be a de facto invitee of Dantzler and Maples," as there was evidence of people using the road to access Black Creek for fishing and swimming.

***Barnes***, 791 So. 2d 199, 203 (Miss. 2001). "[T]here are certain errors that parties must bring to the attention of the trial judge in a motion for a new trial," or they will not be considered on appellate review. ***McLemore v. State***, 669 So. 2d 19, 24 (Miss. 1996). "These include all new matters, motions made upon the ground of inadequate or excessive damages, motions made for new trial where it is contended that the verdict is against the overwhelming weight of the evidence, and the denial of a continuance." ***Id.***; *see generally* T. Jackson Lyons, "Preservation of Claims and Error," Ency. of Miss. Law App. Prac. & Proc. § 11 (J. Jackson & M. Miller eds. 2006).

¶16.    The proper method to address any concerns about evidence would have been through a motion for a new trial pursuant to M.R.C.P. 59, which provides that a chancellor or other trial court sitting without a jury "may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." *See also* ***Purvis***, 791 So. 2d at 203 ("Logically, the only way to present an error regarding a question such as this would be by way of a motion for a new trial").

¶17.    Moreover, the record is replete with the testimony of more than a dozen witnesses who testified to the historical use of the road by the public and adjacent landowners. Sard-Mag Road had been used for decades by members of the community to access Black Creek and for property owners to access their timber. Graves himself repeatedly agreed that it was not reasonable to block access to the road; that Maple and Dantzler should have access to the road; that his blocking the road had nothing to do with Maple or Dantzler, but instead his

7

personal problems with two local individuals; and that he agreed everybody used the roads and never needed to ask permission; and that he himself had never asked permission to use it in the decades before he acquired the land. Such ample testimony, including repeated admissions by Graves, are why the trial court deemed the road to be subject to a prescriptive easement. Additionally, the chain of title leading to Graves' purchase in 2002 indicates exceptions to the title for "unrecorded easements and rights-of-way for existing roads (public or private)." The trial court committed no error in its finding.

¶18. The trial court also found that Graves should have to pay the attorneys' fees of Maples and Dantzler. In his brief, Graves argues without citation that "[t]here should be no requirement for defendants to pay any money to the plaintiffs for legitimately attempting to protect their property rights." It is long-settled that failure to cite any authority in support of claims of error precludes this Court from considering the specific claim on appeal. *See Grey v. Grey*, 638 So. 2d 488, 491 (Miss. 1994). Additionally, this argument is procedurally barred as it was not raised in a motion to reconsider or motion for a new trial. *See McLemore*, 669 So. 2d at 24 (before appellate court can review "motions made upon the ground of inadequate or excessive damages" they must be presented to the trial court).

¶19. The record is clear that Graves repeatedly ignored the orders of the trial court to cease blocking the road and depriving Maples and Dantzler of access. At one point, Graves went so far as to threaten designees of Maples with arrest, even though they were in possession of a lawful court order granting them access to the road. Graves also agreed in the first consent order that he would pay the costs of any attorneys' fees if disobeyed the order. That

8

blatant disregard for the orders of the court, coupled with his repeated admissions at trial by which he actually agreed that blocking the road was wrong, that Maples and Dantzler should have access to the road, and that the road for decades had been used by the community, are reasons why the chancery court deemed an award of attorneys' fees to be warranted. They are also the reasons why the chancellor categorized the action as "frivolous." The trial court committed no error in assessing Graves these costs.

**II. Was there "misjoinder or nonjoinder of parties" because Dudley Maples was not joined as an individual?**

¶20. Graves argues that the trial court should be reversed because Dudley Maples was not joined in the action as an individual, and he cites no cases in support of the argument that misjoinder or nonjoinder warranted reversal. As noted *supra*, failure to cite any authority in support of claims of error precludes this Court from considering the specific claim on appeal. *See Grey*, 638 So. 2d at 491. This argument that Maples should have been joined in the action as an individual was never raised at trial or in any post-trial motion. Accordingly, it is barred. *See McLemore*, 669 So. 2d at (before appellate court can review "all new matters" must be first presented to the trial court). This decision is not made capriciously, but under "the ordinarily sound principle that this Court sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court." *Purvis*, 791 So. 2d at 203.

¶21. Graves strains mightily against these multiple procedural bars, and while still failing to provide citation to cases regarding joinder or the need for necessary parties, asserts that

9

there may be a problem with subject matter jurisdiction. Subject matter jurisdiction may be raised at any time, even for the first time on appeal. *See* M.R.A.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action or transfer the action to the court of proper jurisdiction"); *Comment*, M.R.A.P. 12 ("Under Rule 12(h)(3) a question of subject matter jurisdiction may be presented at any time . . . [and] may be presented for the first time on appeal").

¶22. However, no justifiable basis exists for arguing that a chancery court does not have jurisdiction over matters involving property. Such authority is conferred by our constitution, history, and precedent. *See* Miss. Const. art. 6, § 160. Nor did Graves offer any cases in which a chancery court lacked jurisdiction to address an easement by prescription. Additionally, even if jurisdiction is problematic, "once a chancery court makes a final judgment on the merits of the case, this Court may not reverse that finding without finding an error *in addition to* lack of subject matter jurisdiction." ***U.S. Fidelity & Guar. Co. v. Estate of Francis ex rel. Francis***, 825 So.2d 38, 47 (Miss. 2002) (emphasis added); Miss. Const. art. 6, § 147. Thus this argument fails for a variety of reasons.

### III. Was it error for the trial court to allow Darwin Maples to testify?

¶23. This is the one argument by Graves which is not procedurally barred, as the objection made at trial preserved it for our review. *See **McLemore***, 669 So. 2d at 24 ("Having made an objection at trial, the objection was preserved for appellate purposes despite its failure to

10

appear in the appellant's motion for a new trial"). Graves argues that it was reversible error to allow Darwin Maples, the brother and attorney of Dudley, to testify at trial.

¶24. The landmark Mississippi case on this subject is ***Pittman v. Currie***, in which we examined the general undesirability of attorneys testifying in cases wherein they are counsel, a practice which we have said should be avoided if possible. 414 So. 2d 423 (Miss. 1982); *see* Miss. R. Prof'l Conduct 3.7. We explicitly noted that "permitting [an attorney's testimony at trial is not a ground for reversal." ***Id.*** at 427. We further expounded that

> the rationale of the rule rests on the premise that there exists a conflict of interest when an advocate is asked to be a witness. The rule disqualifies a lawyer where there is a likelihood that the lawyer will be a necessary witness. This rule then is not an immunity from testifying by the advocate witness, but it is a limitation on advocacy.

***Pearson v. Parsons***, 541 So. 2d 447, 452 (Miss. 1989). Allowing an attorney to testify as a witness may result in his or her disqualification as an advocate, but not as a witness with relevant testimony. ***Id.*** at 452 ("withdrawal from representation of both counsel who were to be witnesses on contested issues was required"); *see also* ***West v. State***, 519 So. 2d 418, 423 (Miss. 1988) ("The court may admonish an attorney when it appears that he knew in advance that he would be called upon to testify in a case, for taking active part in the trial of a case, but the court cannot refuse an accused the right to introduce competent evidence in his favor because it may appear that an attorney has violated an ethical rule").

¶25. In spite of our clear precedent prohibiting reversal in these types of cases, Graves urges reversal is warranted because Darwin Maples was allowed to testify. The record is clear that Darwin Maples immediately ceased his advocacy on behalf of his brother when he

11

was brought in to testify. Further, Graves omits an important fact. In *Pittman* and *Pearson*, the attorney-witnesses sought to testify for their clients. In the case at hand, Darwin Maples testified not for his brother and client, but for the Dantzler Trust.

> Mr. Watt [*attorney for the Dantzler Trust*]: So that the record is amply clear, the plaintiff calling this witness to testify [is] Hancock Bank, trustee for A.F. Dantzler, Jr. Trust.
>
> . . .
>
> This is the oldest witness who has knowledge of the road . . . I have interviewed many, many people to establish the relationship with the Dantzler family to establish the use of the road, and the prescriptive easement, which has been created over at least 70 years. And this witness goes further back than anyone else. . . . I don't care whether anyone else asks him any other questions, but the Dantzler Trust should not be prohibited from using [his testimony]. . . . [H]e is not counsel for Dantzler. . . . This is our primary witness. We have two witnesses . . . and this is one of them.

It is clear from the record that the trial court expressly examined the *Pittman* case and grappled with the underlying doctrine (stating that "it is frowned upon by the Court to have someone try to serve as both counsel and as a witness"), and also that Maples was disqualified as an attorney for his brother. This is in accordance with our precedent and has never been the basis for a reversal. The judge acted within his discretion in allowing Darwin Maples to testify.

**Conclusion**

¶26. For the reasons above, we affirm the judgment of the George County Chancery Court that Maples and the Danztler Trust have a prescriptive easement over that portion of Sard-Mag Road crossing the Graves' land, and affirm the judgment that Graves must pay attorneys' fees for all parties.

12

¶27. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., NOT PARTICIPATING.**